# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JULY TERM, 1867.

JOHN W. GASHWILER, JOHN A. T. DeLAND, LOUIS
SLOSS, JOHN S. HENNING, CHAUNCEY B. LAUD,
AND JOHN SKAE *v.* T. N. WILLIS, S. S. TURNER,
J. HODGES, S. W. FRY, AND JOHN ARNOLD.

DEED OF CORPORATION AS EVIDENCE.—A deed, without the corporate seal, pur-
porting to have been executed on behalf of a corporation by its Board of Trus-
tees, is inadmissible as evidence without first showing their authority to execute
the same. The recital of such authority in the deed is not evidence of its
existence.

IDEM.—Whether the above rule would be different when the regularly adopted
corporate seal is shown by competent proof to be affixed to the deed, not
decided.

SEAL OF CORPORATION.—Admitted, for the purposes of this decision, that a cor-
poration may adopt the private seal of the several Trustees or any one of them
as its seal for the occasion.

DEED OF TRUSTEES OF CORPORATION.—The individuals who are the Trustees of a
corporation, in their official character as Trustees, when not acting as a Board,
have no authority, independent of that conferred by the corporation, to execute a
deed of the corporate property.

Statement of Facts.

EXERCISE OF CORPORATE POWER.—The corporate powers of a corporation can be exercised by the Trustees only when duly assembled and acting as a Board.

IDEM.—Conferring authority to sell and convey the property of a corporation is the exercise of corporate power.

POWER OF STOCKHOLDERS TO SELL CORPORATE PROPERTY.—The stockholders of a corporation have no power, as such, to authorize the sale of the corporate property, or to sell the same, either when collectively assembled as such in a stockholders' meeting, or when acting individually.

SALE OF CORPORATE PROPERTY.—The power to sell and convey corporate property can be conferred only by the Board of Trustees when assembled and acting as such. The Board may confer this power upon themselves as individual Trustees, or upon any other person or persons.

CONVEYANCE OF CORPORATE PROPERTY.—Whether the Board of Trustees can authorize the conveyance of all the corporate property, not involved in this case or decided.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

· The defendants were the stockholders of the corporation. The plaintiffs averred in their complaint that on or about the 23d day of September, 1865, they entered into negotiations with the corporation and with the stockholders for the purchase of a gold bearing quartz mine in Tuolumne County, known as the Rawhide Ranch Gold and Silver Mining Company's Claim, and that the defendants represented that they had full power to sell the same, subject only to a trust deed executed by the corporation to Danford N. Barney, of the City of New York, in June, 1865, by which said Barney was authorized at any time between the first day of May and the first day of October, 1865, to sell the mine, according to certain written instructions referred to in the trust deed.

The plaintiffs further averred that the written instructions were not set forth in or attached to the trust deed, but that the defendants represented that by the instructions said Barney was required to sell the mine for the sum of fifty thousand dollars, to be paid to and received by the corporation and defendants in California before said first day of October, 1865, and in case payment was not made by that time the trust deed was to become null and void.

The complaint further averred that on the second day of October, 1865, the defendants represented that the sum of

fifty thousand dollars had not been paid, and that they then had power to sell the mine, and that the plaintiffs on said last mentioned day bought the mine, and paid therefor the sum of twenty-five thousand dollars, took possession thereof, and expended money in erecting machinery on and improving it. That soon after doing so, plaintiffs discovered that the representations with regard to the written instructions requiring the fifty thousand dollars to be paid in California on or before the first day of October, 1865, were false, and that the instructions only required the money to be paid to said Barney in New York on or before said last named day, and that on the 27th day of September, 1865, said Barney had sold the mine to other parties in New York, and received the sum of fifty thousand dollars therefor, and that the plaintiffs, to avoid litigation, had been compelled, on the payment to them of the sum of fifty thousand dollars received by Barney, to convey and had conveyed the mine to the grantees of Barney. Plaintiffs averred that they had sustained twenty-five thousand dollars damages by the false representations of defendants, and asked judgment for that amount.

On the trial, as a part of their case, the plaintiffs offered in evidence the trust deed to Barney. The plaintiffs were non-suited and appealed.

The other facts are stated in the opinion of the Court.

*H. P. Barber*, and *James H. Hardy*, for Appellants.

The conveyance ruled out did not require a seal, because the property conveyed was a mining claim, and the estate created a trust estate.

On the 16th of April, 1850, the Legislature of this State passed the Act concerning conveyances. The following is section one:

" Conveyances of lands, or of any estate or interest therein, may be made by deed signed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged, or proved

and recorded as hereinafter directed." (Hittell's Digest, Art. 643.)

The resolution of the stockholders was the solemn act of the corporation and entire stockholders assembled at a corporate meeting and authorizing the trustees of the corporation to convey to D. N. Barney *in trust* for such corporation. (Willard's Eq. Jur. 413; 2 Story's Eq. Jur., Sec. 972; 2 Wash. on Real Property, 190 *et seq.*)

A *trust* is expressly declared by our statute (Hittell's Digest, 3,150) as capable of being created by an "instrument in writing." Neither at common law nor by statute was it ever held to require any seal. The corporate vote and entry on its minutes were ample evidence of the power of the Trustees to convey in trust to Barney. (*Commercial Bank* v. *Newport Manufacturing Co.*, 1 B. Monroe, 14; *Elysville Manufacturing Co.* v. *Okisko Co.*, 1 Md. Ch. 392; Angell & Ames on Corp., Secs. 224, 228–230, 282–284.)

This attempted deed was also good against plaintiffs as a contract to convey, enforceable in equity, and which would render our purchase of the property in question a mere nullity as part performance had taken place by the third party, or prior purchasers, to wit, payment to Barney, the Trustee of the corporation, of the entire purchase money for its benefit. (*Salmon* v. *Hoffman*, 2 Cal. 142; *Owen* v. *Frink*, 24 Cal. 171.)

Besides these conclusions, on the ground of its being the unsealed instrument of the corporation, it was valid as the sealed instrument of such corporation. "A deed of a corporation may be good, though sealed with any other seal than their own common seal, *if adopted and used* by such corporation, and though it be not alleged in the executing clause of the deed that it is their common seal." (2 Washburn on Real Property, 570, Secs. 6, 7; *Bank of Middlebury* v. *Rutland Railroad Co.*, 30 Vt., 1 Shaw, 159; *Milldam Foundry Co.* v. *Hovey*, 21 Pick. 417.) We are not aware that the Trustees possess any power to convey the entire property and stock *without* a vote of or authorization by the stockholders. The Trustees are mere statute agents of the corporation for the

transaction of the business of such corporation—not to convey away its entire property, except in compliance with a *vote* of the corporation for that purpose. (*Rollins* v. *Clay*, 33 Maine, 132.)

*John B. Hall*, and *Caleb Dorsey*, for Respondents.

The Courts have given to mining claims the recognition of a legal estate of freehold, (*Merritt* v. *Judd*, 14 Cal.,) and as such, subject to the general law requiring a sealed instrument for a transfer thereof. (*Goller* v. *Fett*, 30 Cal. 481.)

The instrument of June 5th, (assuming that the Trustees were duly authorized to convey by deed,) is not the act of the Rawhide Ranch Gold and Silver Mining Company, nor operative to pass its title—it being neither *signed* nor *sealed* by the *corporation*, but signed by and sealed with the private seals of Turner, Willis and Hodges. (*Elwell* v. *Shaw*, 16 Mass. 42; 4 Cruise on Real Property, Sec. 33; *Dubois* v. *The Delaware and Hudson Canal Company*, 4 Wend. 285; *Evans* v. *Wells*, 22 Wend. 324; *Randall* v. *Vetchen*, 19 Johns.; *Bank, etc.* v. *Guttschlick*, 14 Peters, 19; *McDonough* v. *Templeman*, 1 Harris & Johnson; *Townsend* v. *Corning*, 23 Wend. 435; *Echols* v. *Cheney*, 28 Cal. 157.)

The doctrine of the last two cases is, that a description of official character following the signature, does not render it or the seal annexed the signature and seal of the *principal;* it is the exclusive individual act of the agent, in which the principal is not involved to any extent whatever, where the transaction is one requiring a seal for its validity. And where a corporation is the actor, and a deed is the instrument to be executed by its agent, *a fortiori* must the *corporate*, and not the *private seal* of the agent, be used.

The instrument of June 5th is void for want of power in Turner, Willis and Hodges, to convey, and would have been equally void had it been duly signed and sealed. The power was derived from a vote of stockholders. Stockholders have no title, legal or equitable, in, nor are they tenants in common or copartners in reference to the corporate property;

nor does the clause in the Act (Wood's Digest, Art. 448) declaring stock personalty, change the nature of the corporate estate, and a deed by them of all the shares does not affect the corporation's title to its own property. (Angell & Ames on Corporations, Sec. 221, p. 3; *Mickles* v. *The Rochester City Bank*, 11 Paige, 118; *Mohawk and Hudson Railroad Company* v. *Clute*, 4 Paige, 385, 393; *Gorham* v. *Gilson*, 28 Cal. 480.) Neither do stockholders possess any corporate powers whatever, these being expressly and exclusively vested in a Board of Trustees. (See Wood's Digest, Arts. 484–486.)

The Board of Trustees constitute, in legal effect, under the Act of incorporation, the corporation itself. (*Head* v. *The Providence Insurance Company*, 2 Cranch. 127; *Bank of the United States* v. *Danbridge*, 12 Wheat. 64; *Fleckner* v. *Bank of the United States*, 8 Wheat. 338.)

By the Court, SAWYER, J. :

The Rawhide Ranch Gold and Silver Mining Company is a corporation duly organized under the statutes of California, for the purpose of carrying on the business of mining. On the 29th of April, 1865, a special meeting of the stockholders of the corporation was held, pursuant to notice, at the office of the company, at which all the stockholders were present. At this meeting of the stockholders, all the stockholders being present and all the capital stock represented, a resolution was unanimously adopted authorizing S. S. Turner, T. N. Willis and James J. Hodges, Trustees of said corporation, for and on behalf of said corporation, to sell and convey to D. W. Barney the mine, mill, buildings, mining implements, and appurtenances belonging to said company. In pursuance of said resolution, and without any other authority shown, on the 5th of June following a conveyance was executed by said Turner, Willis and Hodges, Trustees, the commencement and form of execution of which are as follows :

" This indenture, made the 5th day of June, A. D. 1865,

between the Rawhide Ranch Gold and Silver Mining Company, a corporation under the laws of the State of California, by S. S. Turner, T. N. Willis and James J. Hodges, Trustees of said corporation, who are duly authorized and empowered by resolution and order of said corporation to sell and convey," etc.

" In witness whereof we, as the Trustees of and for and on behalf of said corporation, have hereunto set our hands and seal (the said corporation having no seal) the day and year first above written.

" T. N. WILLIS. [L. S.]<br>
" JAMES J. HODGES. [L. S.]<br>
" S. S. TURNER. [L. S.]

" Trustees of the Rawhide Ranch Gold and Silver Mining Company."

On the trial, after proving the adoption of the resolution before referred to at a meeting of the stockholders, as stated, the plaintiffs offered said deed in evidence, and defendants objected to its introduction on the three grounds—that it did not appear to be the act or deed of the corporation; that it had not the signature of the corporation, and that it was not sealed with the corporate seal but with the individual seals of the Trustees. The Court sustained the objection and excluded the deed, to which ruling plaintiffs excepted; and this ruling presents the question to be determined.

Under the view we take, it will only be necessary to consider the first ground of the objection, and the question is, does the instrument in question appear to be the act or deed of the corporation? If not, it was properly excluded, and the judgment must be affirmed. It is claimed by respondents that no authority is shown in the parties executing to execute the deed on behalf of the corporation. If the deed of a natural person, purporting to have been executed by an attorney in fact, were offered in evidence, it would, clearly, be inadmissible, without first showing the authority of the attorney. The recital of the authority in the deed itself would furnish no evidence whatever of its existence. The same is true of

3

an artificial person—a corporation—at least, where the corporate seal is not affixed. Whether the rule would be different when the regularly adopted corporate seal is shown by competent proof to be affixed, it is not necessary now to inquire; for it affirmatively appears in this instance that the corporation has no seal, and that the parties executing the instrument used their respective private seals, no express authority to adopt such seals being shown. It may also be admitted for the purposes of this decision, that it is competent for the corporation to adopt the private seal of the several Trustees, or any one of them, as its seal *pro hac vice*, and that the conferring upon the agent power to execute the deed necessarily includes the power to adopt a seal on behalf of the corporation for the occasion. Still, as a seal regularly adopted by the corporation was not in fact used, it is necessary to show authority in the agent to execute the deed, in order to show, by implication, authority in him to adopt a seal for the occasion. The authority of the Trustees to execute the instrument in question must, therefore, affirmatively appear, or it does not appear to be the act or deed of the corporation.

We are not aware of anything in the law, independent of any authority expressly conferred by the corporation, which authorizes Turner, Willis and Hodges, in their official character as Trustees, to execute the instrument in question on behalf of the corporation. No law of the kind has been called to our attention, and we do not understand that any is claimed by appellants' counsel to exist. And there is nothing in the nature of those offices, as connected with the object and business of the company, from which a general power in the Trustees, when not acting as a Board, to sell and convey the mine, mill and other property of the company, could be implied. (*McCullough* v. *Moss*, 5 Den. 575.) The parties executing the instrument, then, if they had any authority in the premises, must have derived it from some corporate act; and the only act proved or relied on is the resolution adopted at the stockholders' meeting before mentioned. This was a meeting of the stockholders only. It was called as such, and the proceedings all appear to have been conducted as a stock-

holders' meeting. The resolution authorizing the sale and conveyance of the mine, etc., in question, was adopted by the stockholders, as such, at said meeting, and not by the Board of Trustees, or at any meeting of said Board. The Board of Trustees do not appear to have ever acted at all upon the matter in the character of a Board, but the testimony shows that they acted in pursuance of the said resolution adopted at the meeting of stockholders.

Section five of the Act authorizing the formation of corporations for mining purposes provides : " That the corporate powers of the corporation shall be exercised by a Board of not less than three Trustees, who shall be stockholders," etc. And section seven provides that : " A majority of the whole number of Trustees shall form a Board for the transaction of business, and every decision of a majority of the persons duly assembled as a Board shall be valid as a corporate act." (Laws 1853, p. 88, Sec. 5 ; 7 Hittell's Gen. Laws, Arts. 936, 938.) Conferring authority to sell and convey the corporate property is the exercise of a corporate power, and under these provisions the " corporate powers of the corporation " are to be exercised by the Board of Trustees when the majority are " duly assembled as a Board." When thus assembled and acting the decision of the majority " shall be valid as a corporate act." We find nothing in the Act authorizing the stockholders, either individually or collectively in a stockholders' meeting, to perform corporate acts of the character in question. The property in question was the property of the artificial being created by the statute. The whole title was in the corporation. The stockholders were not in their individual capacities · owners of the property as tenants in common, joint tenants, copartners or otherwise. (*Gorham* v. *Gilson,* 28 Cal. 484 ; *Mickles* v. *Rochester City Bank,* 11 Paige, 128.) This proposition is so plain that no citation of authorities is needed. Had the stockholders all executed a deed to the property, they could have conveyed no title, for the reason that it was not in them (*Wheelock* v. *Moulton et al.,* 15 Vt. 521 ;) and what they could not do themselves they could not by resolution or otherwise authorize another to do for them.

The corporation could only act—could only speak—through the medium prescribed by law, and that is its Board of Trustees. As well might the citizens of San Francisco in public meeting assembled, by unanimous resolution authorize certain Supervisors, designated by name, to sell and convey the City Hall. It is said, however, that the Trustees were also all present and participated in the proceedings at the stockholders' meeting and assented to the resolution; that the resolution therefore was approved by all of the constituents of the corporation, and the powers of the corporation were exhaustively exercised. But they were acting in their individual characters as stockholders, and not as a Board of Trustees. In this character they were not authorized to perform a corporate act of the kind in question. As well, also, might a valid ordinance be passed by the citizens of San Francisco in public meeting assembled, at which the Supervisors were all present and voted in the affirmative. Such an ordinance, when signed by the Mayor, would have the assent of all the constituents of the corporation as clearly as the resolution in question has in the present instance. But such is not the mode in which the corporation is authorized by the law of its creation to manifest its will and exercise its corporate powers. The power to sell and convey could only be conferred by the Trustees when assembled and acting as a Board. This is the mode prescribed. As a Board they could perform valid corporate acts, and confer authority within the province of their powers, upon the Trustees individually or upon any other parties to perform acts as the agents of the corporation. · We are not without authorities upon this precise point.

In *Conro* v. *Port Henry Iron Company*, 12 Barb. 27, the same question arose. A lease of the company's iron works was made in pursuance of a resolution adopted at a meeting of the stockholders at which the Directors were present. It was held that the resolution imparted no authority to make the lease. The Court say: "The stockholders in this case had no power to make a lease or do any other administrative act in the management of the affairs of the corporation. If a lease could be made at all, it could be executed only in

pursuance of the act of the Directors, who are the body appointed by the charter for the management of its affairs. It is no answer that the individual stockholders, who were present at the meeting when the lease was ordered, were also Directors. They did not meet as Directors, but as stockholders. The Mayor and Common Council of a municipal corporation can only act in the manner prescribed by law. When not acting in their official character and in the mode prescribed by law, their acts are no more binding than those of other private citizens. (See, per Lord Mansfield, *Rex* v. *Head*, 4 Burr, 2,515, 2,521.)" (Ib. 63.)

*McCullough* v. *Moss*, 5 Den. 567, was an action upon a note purporting to have been executed by the Rossie Lead Mining Company. It was executed in pursuance of a resolution adopted by the stockholders. The statute of New York, conferring the power to manage the affairs of the corporation upon a Board of Directors, it will be seen, was similar to ours. Lott, Senator, in the Court for the Correction of Errors, said: "The affairs of the corporation were to be conducted by five Directors, a majority of whom formed a Board for the transaction of business, and a decision of a majority of those duly assembled as a Board was requisite to make a valid corporate act. (1 R. S. 600, Sec. 6.) The authority of the Board to the President and Secretary was therefore necessary to give validity to the note. This was not shown. The resolution passed at the meeting of the stockholders, contained in the letter of the Secretary, dated October 6th, 1839, could not bind the corporation, especially so as to affect the members not present. When a charter invests a Board with the power to manage the concerns of a corporation, the power is exclusive in its character. The corporators have no right to interfere with it, and Courts will not, even on a petition of a majority, compel the Board to do an act contrary to its judgment. (Ang. & Ames on Corp. 121–123, 151–164.) The stockholders, as such, in their collective capacity, could do no corporate act. The Directors were their representatives, and alone authorized to act. It is one of the fundamental conditions of the contract into which

the corporators have entered by becoming members of the corporation, that its concerns shall be managed in the manner prescribed by the Act of incorporation, and from this no essential departure can be made." (Ib. 575.)

The same doctrine is held in *Cammeyer* v. *United German Lutheran Churches*, 2 Sandf. Ch. 208, 221, 228–9.) The Vice Chancellor says: " The fact that a majority of the Trustees were present, acting as a Council, does not make the resolutions of the Council the act of the Board of Trustees. Suppose, in the case of a bank, that at a general meeting of the stockholders certain resolutions should be adopted to sell land or do any other corporate act, and it should be made to appear that all the Directors of the bank were present and assenting to what was done, the corporation could not be bound unless the Directors, at a meeting of the Board, should concur in the resolutions. The Directors in the bank and the Trustees in this case are, by the charter, the select class or body which is to exercise the corporate functions. In order to exercise them they must meet as a Board, so that they may hear each other's views, deliberate, and then decide. Their separate action, individually, without consultation, although a majority in number should agree upon a certain act, would not be the act of the constituted body of men clothed with the corporate powers. Nor would their action in a meeting of the whole body of corporators, or of another and larger class in which they are but a component part, be a valid corporate act. In thus acting they would not be distinguishable from their associates, and their action is united with that of others who have no proper or legal right to join with them in its exercise. All proper responsibility is lost. The result may be the same that it would have been if they had met separately, and it may be different. In the general assemblage influences may be brought to bear upon the Trustees which, in their proper Board, would be unheeded; and no one can say with certainty that their vote in the latter event would have been the same. It was held in the *Case of the Corporations*, (2 Coke, 476, by Fraser,) that where the power to make a by law was in the Mayor and Aldermen, a

by law made by the Mayor, Aldermen, and Commonalty, was void." (Ib. 229.)

So also in *State* v. *Ancker*, 2 Rich. 245, the action of a Board illegally assembled was held to be without authority. The Court say : " Without being summoned together, the Board, as individuals, have no official authority, nor have they any original authority at all, either under the charter or the by laws." (Ib. 281, 283.) The charter granted by Elizabeth to the borough of Helleston conferred the power of making by laws on the Mayor and Aldermen, and the power of electing Burgesses on the Mayor, Aldermen, and Commonalty. A by law was made by the Mayor, Aldermen, and Commonalty—the entire body. Its validity was in question in *Rex* v. *Head*, and it was held void on two grounds. One was, in the language of Lord Mansfield: " The body at large had no power to make by laws, because the power is, by the charter, given to the Common Council, consisting of the Mayor and Aldermen." (4 Burr, 2,521.) Yet the Mayor and Aldermen acted in connection with the Commonalty. These cases are in point, and none to the contrary have been called to our attention. They are the necessary consequence of the principles established by the great body of the authorities, that the corporate powers of corporations can only be exercised in the mode and through the instrumentalities prescribed by their charters. In this case, the resolution adopted by the stockholders was not a corporate act, and it conferred on the three Trustees named—whether they constituted the whole number of Trustees does not appear—no authority to perform a corporate act, to execute the deed, or adopt a seal for the occasion. It not only does not appear, then, that the instrument in question is the act or deed of the corporation, but it affirmatively appears that it was executed in pursuance of a resolution that conferred no authority whatever to perform a corporate act; for the plaintiffs themselves introduced in evidence the authority under which they claimed the act to have been performed, and upon which they relied. Having done this, we are not at liberty to indulge the presumption that the parties executing the deed on behalf of the corpora-

tion were otherwise duly authorized. The authority acted upon is affirmatively shown, and this fails. We think the deed properly excluded. But even if it had been admitted without further proof of the authority of the parties to execute it, it would not have availed the plaintiffs. As there does not appear to have been any authority in the parties assuming to act, to sell or convey at all, it is unnecessary to discuss the other questions.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.

By the Court, SAWYER, J., on petition for rehearing:

The consequences assumed as the only basis of the argument in the petition for rehearing do not follow from anything determined or in any way suggested in the opinion in this case. We have nowhere held, or even intimated, that the Board of Trustees of a corporation can convey all the property of the corporation necessary to enable it to carry on the business for which it was organized, or do anything else destructive of the objects of its creation without the consent of its stockholders. We have not even held that it was competent for the Trustees, acting as a Board, to authorize the conveyance of the property now in question without the consent of the stockholders. There was no such question in the case. We simply held that the stockholders themselves could not authorize the Trustees, acting as individual Trustees, or anybody else, to convey it—that nobody could convey it unless authorized by some act of the Board of Trustees, acting as a Board. It may be conceded for the purposes of this case that the Board of Trustees itself could not authorize a conveyance of the property in question without the consent of the stockholders. But it is unnecessary to consider that question, for the case does not present or even suggest it. It will be time enough to decide that question when it arises.

Rehearing denied.