# THE STATE OF NEVADA *ex rel.* J. C. COREY *v.* SAMUEL T. CURTIS.

BY-LAWS OF MINING COMPANY—ADOPTION BY LONG USE. Where what purported to be the by-laws of a California mining corporation, though adopted by the stockholders instead of the trustees, appeared to be the only by-laws ever adopted by the corporation and were found properly recorded in the books kept by the trustees and had been used, acted upon andreferred to as the by-laws, both by the trustees and stockholders, for upwards of ten years and ever since their adoption : *Held,* that they were to be considered and treated as the regular by-laws of the corporation.

ELECTION OF MINING COMPANY TRUSTEE A CORPORATE ACT. The election of a trustee of a mining corporation to fill a vacancy is a corporate act and must be exercised in the manner required by the charter.

CORPORATION CANNOT MAKE BY-LAWS CONTRARY TO CHARTER. Where the statute under which a corporation was organized required a majority of the trustees to do a corporate act and a by-law authorized a vacancy in the office of trustee to be filled by a less number than a majority : *Held,* that such by-law, being contrary to the charter, was void.

MINING COMPANY ELECTIONS—EXTENT OF REGULATION BY BY-LAWS. Under the California laws in reference to mining corporations, the *manner* of an election of a trustee may be regulated by the by-laws; but the *substance* must be in conformity with the statute.

State ex rel. Corey *v.* Curtis.

WHEN BY-LAW, PARTLY VOID, IS WHOLLY VOID. If part of a by-law is void and the whole forms an entirety, so that the part which is void influences the whole, the entire by-law is void.

WHEN STATUTE VOID IN PART AND VALID IN PART. The principle that an act may be void in part and valid in part applies only when the respective portions are wholly independent of each other.

OFFICER " DE FACTO," WHAT. An officer *de facto* is one who has the reputation of being the officer he assumes to be, who has the apparent right and performs the duties of the office under claim and color of right and yet is not a good officer in point of law.

OBJECT OF SUSTAINING ACTS OF OFFICER " DE FACTO." The principle of sustaining the acts of an officer *de facto* is designed as a shield for the protection of the public and of third persons, who are not cognizant of the facts nor bound by any rule of law to inquire into the title by which he exercises the office.

LIMITATION OF PRINCIPLE SUSTAINING ACTS OF OFFICER " DE FACTO." The principle of sustaining the acts of a person acting as an officer as those of an officer *de facto* ought not to be extended to cases where the rights of the public are not affected nor where all the parties interested have knowledge that the person pretending to be an officer is not an officer *de jure.*

OFFICER " DE FACTO " AS DISTINGUISHED FROM USURPER. In order to make a person an officer *de facto* he should in some way have been put into the office and have secured such a holding thereof as to be considered in peaceable possession and actually exercising the functions of an officer ; an intrusion by force is not sufficient.

, This was an application to the Supreme Court for a writ of mandamus to remove the respondent from the office of superintendent of the Ophir Silver Mining Company. The petition of the relator set forth fully the facts upon which he relied. An alternative writ was issued, requiring the respondent to show cause why he should not be removed and surrender up the office of superintendent. On July 17, 1874, the return day of the writ, respondent appeared and filed an answer, alleging that the proceedings, claimed by the relator to constitute a removal of the respondent and an election of the relator, were void. The property of the Ophir Company, situated at Virginia City, being of great value,

the controversy as to who was entitled to act as superintendent and have the management thereof became of great importance to the parties interested. The facts are stated in the opinion.

*Hall McAllister*, for Relator.

I.   The by-laws of the Ophir Silver Mining Company were properly made by the stockholders. 1 Hittell's Gen. Laws of Cal., 935, 936, 959. They were fully ratified and adopted by the board of trustees. *Union Bank of Maryland* v. *Ridgeley*, 1 Harris & Gill, 325; *Langsdale* v. *Bouton*, 12 Ind. 467; Angell & Ames Corp., Sec. 238, 284, 325; *Pixley* v. *West. P. R. R. Co.*, 33 Cal. 192. They were written in full on the first pages of the record book of the proceedings of the board of trustees. They were the only by-laws of the company, and had been substantially adopted both by stockholders and trustees.

II.   The statute of California provides that "when any vacancy shall happen among the trustees by death, resignation or otherwise, it shall be filled for the remainder of the year in such manner as may be provided by the by-laws of the company." 1 Hittell, 936. The whole subject matter of filling a vacancy among the trustees is left completely to the by-laws. Under the power conferred by statute to fill vacancies among the trustees according to the by-laws, the company might by its by-laws have authorized the president alone to fill such vacancies. Instead of doing this, however, the by-laws provided that the president should have the casting vote at any meeting of the trustees at which a vacancy was to be filled. The giving of this casting vote conferred something new, something additional to what he before had as a trustee, and this something was a casting vote in case of a tie. It may seem peculiar that one person should have two votes upon the same question, but it is only in case of a

particular exigency. Such a power ought to reside some-
where, to prevent a "dead lock." "A casting vote sometimes
signifies the single vote of a person, who never votes but in
the case of an equality; sometimes the double vote of a per-
son, who first votes with the rest, and then, upon an equal-
ity, creates a majority by giving a second vote." 1 Chitty's
Blackstone, note 73; 5 Jacob's Law Dictionary, Parlia-
ment, sub. 7; 2 Dillon Municipal Corporations, Sec. 208;
Cushing's Par. Law, Secs. 309, 317; Hittell's Gen. Laws,
1129, 1130; *McCullough* v. *Annapolis and Elkridge R.*, 4
Gill, 58. Unless the trustees can act under the by-law,
providing for the filling of a vacancy in the board of trus-
tees, there is no way in which such vacancy can be filled.
And if the trustees act, in filling such vacancy, under the
power given by the by-laws, the power must be taken as it
is given—to wit, with right of the president to have his
casting vote in case of a tie.

III.   The filling a vacancy in the board of trustees is not
a corporate act, it is an administrative or elective act. An
election of trustees is the selection of those to whom are
entrusted the corporate powers and by whom corporate acts
can be performed.   There are various acts in the adminis-
tration of the affairs of a corporation, which are very essen-
tial to its proper administration and yet not corporate acts,
such as the appointment of inspectors of corporate elections,
(3 Serg. & Rawle, 29,) and the calling together of the trus-
tees by the president, whenever he deems it necessary.   But
if the filling a vacancy were a corporate act it was performed
in this case by a majority of a quorum of the board of
trustees, by their adopting by-laws prescribing how such
vacancy should be filled by the trustees, and by their giving
a casting vote to the president at any meeting of the trustees
for that purpose.

IV.   While the statute asserts the general proposition that
a decision of a majority of a quorum of the trustees shall l

be valid as a corporate act, it contains a special provision for filling a vacancy in the board of trustees as provided by the by-laws. This special provision has equal validity and equal force as the general provision. According to what rule of law, according to what canon of construction is it, that this court is asked to expunge this special and distinct provision from the statute book? There is no difficulty in allowing the general provision to operate, and also allowing the special provision to create an exception thereto, and to apply and control in the particular category which the statute intended it should provide for.

· V.    A majority of the trustees of the Ophir Company on June 29, 1874, displaced Mr. Curtis as superintendent and elected Mr. Corey to his position. If this was not a *de jure* board of trustees, it was at least a good *de facto* board of trustees. Who is an officer *de facto?* One whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid. See *Trustees of Vernon* v. *Hill,* 6 Cowen, 27; *Smith* v. *Erb,* 4 Gill, 460; *People* v. *Mattice,* 2 Abbott N. S. 290; *Ohio and Mississippi R. R. Co.* v. *McPherson,* 3 Missouri R. 25; Angell & Ames Corp., Secs. 139, 287; *Mickle* v. *Rochester City Bank,* 11 Paige, 124; *Doremus* v. *Dutch Church,* 2 C. E. Green, N. J. 332; 11 Serg. & Rawle, 413; 21 Penn. State, 146; 50 Missouri, 595; 2 Gill, 287; *Mallett* v. *Uncle Sam Co.,* 1 Nev. 188; *Brown* v. *Lunt,* 37 Main, 423; *Brown* v. *O'Connell,* 36 Conn. 432. For a very able and very exhaustive review of the whole doctrine as to *de facto* officers, see 12 American Law Register, March, 1873, 165.

VI.    There is independent evidence of Lyle being a *de facto* trustee. The minutes of the board of June 29, 1874, show that other business was done besides the displacement of Curtis and the appointment of Corey. The minutes of the

22

next meeting in July show that Lyle acted.  He acted at other meetings.

VII.  As to what constitutes a *user* of an office, see *The King* v. *Tate*, 4 East. 337, condensed edition, 452.  An irregular election is voidable, not void.  Abbott's Digest, Law of Corporations, 310.

VIII.  The title of the trustees by whom relator was elected superintendent cannot be inquired of collaterally in this action.  It can only be attacked directly in an action for that purpose.  *People* v. *Sturns*, 5 Hill, 627; *King* v. *Hughes*, 4 Barn. & Cress. 368; *Douglas* v. *Wickwire*, 19 Conn. 488; *Cochran* v. *McCleary*, 22 Iowa, 76; *Facey* v. *Fuller*, 13 Mich. 531.

*Garber & Thornton* and *Mesick, Seely & Wood*, for Respondent.

I.  Defendant was regularly elected by the board of trustees to his position of superintendent on March 22, 1874, and has been ever since in that position, claiming under such election.  Whether his right to the place has ceased and relator's commenced depends upon the question whether the vote cast by Lyle at a meeting of the board of trustees was valid or invalid.  We claim that Lyle was not a trustee and for that reason could not vote for the election or removal of a superintendent.  He was not elected by the stockholders; and the trustees had no authority to elect him. The by-laws could not confer on the trustees the power of election, that power being by the charter given to the stockholders.  7 Cal. 24.  The provision in the charter authorizing vacancies in the board to be filled in the manner prescribed in the by-laws cannot justify a departure from the charter in respect to who should elect.  The word "manner" in this connection should receive the same interpretation as

when used in connection with the annual election of trustees.  2 Stewart (Ala.), 234; 10 N. J. Eq. 70.

II.  But there were no valid by-laws on the subject of filling vacancies.  The by-laws which existed were not made by the trustees, but by the stockholders, and so without authority.  The pretended by-law under which the election of Lyle is claimed was never even acted upon by the board except in the case of Lyle.  11 Am. Rep. 268.  But even if the trustees had power to fill a vacancy, they never did it.  The vote to fill the vacancy was a tie unless trustee Lissak had two votes.  But as trustee he had only one vote; his vote a second time as president cannot be considered as the vote of a trustee.  A casting vote, when allowed, cannot be exercised in cases of electing officers.  The pretended by-law under which a casting vote is claimed was never adopted by the board of trustees, and was never acted upon before; and hence was invalid.

III.  The public policy of the rule which gives validity to the acts of officers *de facto* in certain cases does not apply to the acts of Lyle in question.  He had never exercised any authority in the board prior to the act in question.  He was forced upon the board by the illegal act of the president in an effort by the minority against the will of the majority to deprive defendant of his position and give it to relator.  39 N. H. 301; 3 Blackf. 377; 7 N. H. 547.  Lyle, in point of fact, was not elected, and herein lies the distinction between this case and those cases where there has been an election or appointment.  *King* v. *Ginsor*, 6 Term, 732; 19 Cal. 529; *Gashwiler* v. *Willis*, 33 Cal. 19; Angell & A. Corp. Sec. 744; 2 Stuart, 242; 29 Barb. 208; 2 Levins, 294; Sayer, 213; 2 Vent. 182; 6 East. 356; 11 Cal. 380; 2 Stockton, 70; Andrews, 163; 47 Pa. 292; 3 Whart. 228; 16 Cal. 618; 39 N. H. 295; 2 Strange, 1003, 1157; 34 N. H. 154.  No act done by Lyle after the attempted removal of Curtis is even

evidence to show that he was *de facto* trustee when the attempt was made.   60 Barb. 249.

IV.   The power to elect or appoint officers is a corporate incident.   Filling vacancies, like making by-laws, is also clearly a corporate act.   A. & A. on Corp. Sec. 144; *Kearney* v. *Andrews*, 2 Stock. Ch. 70.   Being a corporate act, it must of necessity be done either by the stockholders or the trustees, and certainly by the stockholders, unless the charter expressly gives the power to do it to the trustees.   The language of the statute that vacancies shall be filled in the manner directed by the by-laws, does not differ from the case presented by *Kearney* v. *Andrews*, 2 Stock. Ch. 70.   See sec. 6 of the charter, Hittell's Gen. Laws, 936, 941.   But if the board had the power to fill the vacancy, the result would be the same; for the majority must have acted as decided in *Gashwiler* v. *Willis*, 33 Cal. 19, and the by-law is void according to all the authorities.

V.   The charter (Hittell, 933) provides for the appointment of "*subordinate* officers," etc.   We also find there among the corporate powers a power "to appoint such officers and to remove them, except that no trustee shall be removed unless in a certain way."   Plainly here the appointment of other than subordinate officers is made a corporate power and if we do not include "trustees" as officers, no force is given to the evidently studious omission of the word "subordinate."   Besides, trustees are expressly named here as of the officers to be appointed and removed as a corporate act.   Next it provides for the substantial part of electing trustees, that they shall be elected by the stockholders in such mode as the by-laws may prescribe, subject, however, to certain formalities required by the charter itself.   Next that vacancies shall be filled "in the manner" prescribed by the by-laws.   There is a distinction between the *manner* and the *substance* of an election.   The intention of the legislature

was to allow the by-laws to do no more than regulate the mere form of filling vacancies. *Kearney* v. *Andrews, supra.*

VI.   It was not the intention of the framers of this by-law to give a double vote.   They were providing a presiding officer for certain deliberative assemblies, and the fair inference is that they used the words as Cushing defines them, and the fact which appears by the uncontradicted evidence of Grayson and Baldwin, that for fourteen years after their pretended adoption no double vote was ever before attempted to be cast, gives additional force to this construction.   It shows the practical interpretation put upon this language. It is only by inference that it can be said to give a double vote.   It says the vacancy shall be filled by the other trustees in office, not by the board as a board, and it is sought to piece this out by reference to a distinct by-law, which is void on its face, as expressly contravening the charter provision that at all meetings of the board a majority shall rule.

VII.   To be an officer *de facto* one must have the reputation of being so *prima facie* at least.   He must by some presumption seem to be so.   Then third persons may safely act upon such presumption.   Angell & Ames, Sec. 287; 6 East. 368; Tapping on Mandamus, 77 to 230; *McCullough* v. *Curtis*, 3 Nev. 202; 2 Abb. N. S. 290; 35 Missouri, 25; 4 Gill, 460; A. & A., Sec. 139; 11 Paige, 124; 21 Penn. 146; 50 Mo. 595; 10 E. C. L. 622.

VIII.   Here Corey is maintaining his right to oust Curtis and according to all the cases he must show himself the officer *de jure*.   No case can be found where the plaintiff succeeded because he was elected by a *de facto* board.   Lyle was never a *de facto* officer as shown by the New Hampshire and other cases cited.   The other side persist in putting the case as if Corey had got into possession and Curtis was trying to enjoin or oust him.   The courts will never aid in consummating an inchoate wrong, though when an officer

has succeeded in getting into peaceable possession *de facto*, they may refuse to oust him except in a particular way. And it was never heard of before, where an officer has succeeded in getting into possession *de facto* and done acts, though out of regard to the rights of the public his acts may be sustained, yet that when his attempts have been successfully resisted and he kept out of office, the courts will be active to put him into office in order that he may do acts *de facto* and thus deceive the public and create rights by estoppel and against law.

IX. The by-law is clearly void in so far as it attempts to authorize less than a majority of the trustees to perform corporate acts generally. Then, even if this particular corporate act could be authorized by the by-law to be performed by less than a majority, we have the case of one single entire clause in a by-law void in part and therefore by all the authorities void *in toto*.

By the Court, HAWLEY, J. :

The board of trustees of the Ophir Silver Mining Company consists of seven members. At a meeting held on the 29th day of June, 1874, there were present six trustees, viz. : Lissak, Locan, Hassey, Baldwin, Grayson and Hall. On motion, a vote was taken to elect a trustee to fill a vacancy occasioned by the resignation of trustee Peart. This vote resulted in a tie; trustees Lissak, Locan and Hassey voting for W. S. Lyle; trustees Baldwin, Grayson and Hall for J. S. Wall; whereupon trustee Lissak, president of the board, having voted as a trustee, claimed the right to give the casting vote under art. VI. of the by-laws of the corporation, which provides that the president "shall have the casting vote at all meetings of the stockholders and trustees," and again voting for W. S. Lyle, declared him duly elected a trustee.

At the same meeting, motions were made to declare vacant the position of superintendent held by respondent, and to elect a successor. Trustees Baldwin, Grayson and Hall objected to Lyle voting, and claimed that he was not legally elected a trustee, having only received three votes, and further claimed that there was no vacancy, respondent Curtis having been regularly elected superintendent on the 22d day of March, 1874, and never having been legally removed. Notwithstanding these objections the motions were carried in the affirmative and the relator, Corey, was elected superintendent by the votes of trustees Lissak, Locan, Hassey and Lyle; trustees Baldwin, Grayson and Hall voting in the negative.

1. It is contended on the part of respondent that the by-laws of the Ophir company are void. First, because they were adopted by the stockholders instead of the trustees. It appears that they are the only by-laws ever adopted by the corporation. They are found properly recorded in the books kept by the board of trustees, and have been used, acted upon and referred to as the by-laws of the corporation, both by the trustees and stockholders, ever since their adoption in 1860. Under these circumstances, we think they must be considered and treated as the regular by-laws of the corporation. Second, it is claimed that the particular section of the by-laws under which the president is given the casting vote is void, because inconsistent with section 7 of the act providing for the formation of corporations, which declares that: "A majority of the whole number of trustees shall form a board for the transaction of business, and every decision of a majority of the persons duly assembled as a board shall be valid as a corporate act." General Laws of California, 1 Hitt. 938. But relator contends that under section 5 of said act, an exception is made in cases where the election is to fill a vacancy. Section 5 provides: "When any vacancy shall happen among the trustees by death, resig-

nation or otherwise, it shall be filled for the remainder of
the year in such manner as may be provided by the by-laws
of the company. 1 Hitt. 936. Article III of the by-laws
provides that: "Vacancies in the board of trustees shall be
filled by the other trustees in office." Relator also claims
that an election to fill a vacancy is not a corporate act and
therefore not necessary to be performed by a majority of the
board.

Is the election of a trustee to fill a vacancy a corporate
act? To have perpetual succession and, of course, the
power of electing members in the room of those removed by
death or otherwise is among the ordinary incidents of a cor-
poration. 2 Kent Com., Sec. 277. "The power to fill
vacancies in a corporation and elect officers is a corporate
incident." Angell & Ames on Corporation, Sec. 144; *Kear-
ney* v. *Andrews*, 2 Stockton Ch. (N. J.) 72; *Gashwiler* v.
*Willis*, 33 Cal. 19. In the general provisions concerning
corporations we find that every corporation has power: "To
appoint such subordinate officers and agents as the business
of the corporation shall require." 1 Hitt. 746. In the act,
under which the Ophir was incorporated, it is provided that
the corporation shall have power, "to appoint such officers,
agents and servants, as the business of the corporation shall
require." 1 Hitt. 935. Trustees are elective officers of the
corporation; and it follows from the foregoing provisions
that their election is a corporate act. Being a corporate
act it must be exercised in the manner required by the
charter. The act provides that "a majority of the persons
duly assembled as a board shall be valid as a corporate act."
The by-law creates a right of election contrary to the
charter. It authorizes an election to fill a vacancy by a less
number than the majority. For instance, in the present
case, there is an equality of votes; and instead of the elec-
tion being made by a majority the president really names
the trustee. A corporation cannot make by-laws contrary

to its charter, and it appears to us quite clear that this particular portion of the by-law, if it is susceptible of the construction claimed for it by relator's counsel, is in violation of the charter under which, and in conformity with which, all corporate powers, all corporate acts, must be exercised. We must not be understood as deciding that the power of electing trustees to fill vacancies was delegated to the board of trustees; for upon this we express no opinion; but if so delegated it was not the intention of the legislature to invest the trustees with the power to exercise such a right in any other manner than other corporate acts are exercised; and no right of performing any corporate act unless by a majority vote having been given by the charter, it was not within the power of the stockholders or trustees to change this provision by adopting a by-law giving to the president a double vote. The *manner* of the election might be regulated by the by-laws, but the *substance* must be in conformity with the charter. *The State* v. *Adams*, 2 Stew. (Ala.) 237; *Kearney* v. *Andrews, supra.*

Again: it is conceded that the president would not have the right in all cases to give the casting vote and respondent's counsel contend, for this reason, that the by-law is void; that a single entire clause of the by-laws cannot be good in part and bad in part. We think that this objection is also fatal to this particular clause of the by-laws. In *The King* v. *The Steward, etc., of Faversham,* Lord Kenyon, Ch. J., said: "Though a by-law may be good in part and bad in part, yet it can be so only where the two parts are entire and distinct from each other." 6 T. R. 356. "If a by-law be entire, so that the part which is void influences the whole, the entire by-law is void." Ang. & A. on Cor., Sec. 358. The same doctrine has frequently been announced in the construction of statutes. It is true, as was said by Shaw, C. J., in *Fisher* v. *McGirr*, that "there is nothing inconsistent in declaring one part of the same statute valid and an-

other part void." 1 Gray, 22. This is sustained by the decisions of this Court. *Evans* v. *Job*, 8 Nev. 342. But in all the cases brought to our notice where this principle has been applied, it is where the respective portions of the statute were wholly independent of each other. Judge Cooley says: "The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, * * * but whether. they are essentially and inseparably connected in substance." Cooley's Con. Lim., 178. This distinction is always recognized in the authorities. *Lathrop* v. *Mills*, 19 Cal. 530.

2. Was Lyle such a *de facto* officer as to make his acts valid and binding? What is an officer *de facto?* "One who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." *Parker* v. *Kett*, 1 Lord Raymond, 658; *The King* v. *The Corporation of Bedford Level*, 6 East, 368. "One who actually performs the duties of an office, with apparent right and under claim and color of an appointment or election." *Brown* v. *Lunt*, 37 Maine, 428. "One who has the color of right or title to the office he exercises; one who has the apparent title of an officer *de jure*." *Brown* v. *O'Connell*, 36 Conn. 451. "On the one hand he is distinguished from a mere usurper of an office, and on the other from an officer *de jure*." *Mallett* v. *Uncle Sam G. & S. M. Co.*, 1 Nev. 197; *Plymouth* v. *Painter*, 17 Conn. 588. Such in brief are the general definitions under which we are asked to declare Lyle a *de facto* trustee. We do not deem it necessary to examine minutely all the points with the numerous subdivisions which were ingeniously and elaborately argued by the respective counsel with a citation of authorities indicative of an extended and praiseworthy research; but shall confine ourselves to what we deem the controlling points in this branch of the case.

The principle of sustaining the acts of persons as officers *de facto* is designed as a shield for the protection of the public and of third persons, who are not cognizant of the true state of the facts and are not required by the law to inquire into the title of one who is found exercising the duties of a public office.   In order to protect third persons transacting business with such officers under such circumstances as to induce them to believe that they were dealing with legal officers, the law has reached out its strong arm to a dangerous extent, upon the principle that although not officers *de jure*, they were officers in fact whose acts public policy required should be considered valid.   Such a principle certainly ought not to be extended to a case where the rights of the public are not affected, nor where all the parties interested have knowledge that the person pretending to be an officer is not an officer *de jure;* for in such a case the reason of the rule no longer exists and the law should not be invoked for protection.   As was argued for the crown in the case of the *King* v. *Lisle,* decided in the court of king's bench in 1738, "As an officer *de facto* is a notional creature only, erected by the law in order to answer the ends of justice and equity under particular circumstances, his power ought not to be extended further than what is absolutely necessary for that purpose." Andrews, 166.   In the case of *The King* v. *The Corporation of Bedford Level,* Lord Ellenborough, C. J., said: " In this case Gotobed was never more than deputy; and therefore after the death of his principal he never could have had the reputation of being more than deputy; but such reputation must necessarily have ceased with the knowledge of the death of his principal.   When that fact was notorious to the owners of land in this level, no one could have registered his deeds with him under a belief that he was acting as the assistant of one, who by the course of nature had ceased to fill the office, in the execution of which he was to be assisted by the deputy."

Although the law does not always take into consideration the mode by which the office was obtained, yet in order to make a person an officer *de facto* it does require that he should in some way be put into the office and that he should also have secured such a holding thereof as to be considered really in peaceable possession and actually exercising the functions of an officer. It is shown by the affidavits of Baldwin and Grayson that "the first time W. S. Lyle ever attempted to act as a trustee of said company was on the said 29th day of June, 1874, when the president attempted to declare him elected as a trustee." There was no acquiescence in his election. The three trustees who voted against him endeavored to prevent his voting and protested against his being allowed to vote or to take any part whatever in the proceedings of said board. It is true that subsequent to his pretended election a motion was made and carried by an unanimous vote to allow a certain bill. It is also true that Lyle intruded himself by force and actually voted as a trustee at a subsequent meeting of the board. But these acts did not make him a *de facto* trustee. In the case of *The State* v. *Wilson* it was attempted to be proved that one Evans, who had signed orders as adjutant, was in fact adjutant because he acted as such afterwards at a muster. The court said: "The evidence that Evans acted as adjutant afterwards at the muster cannot have relation back, or prove the existence of the authority at the time the orders were issued. *There should have been some evidence that he had acted previously.*" 7 N. H. 547. In *Golding* v. *Clark*, the court held that "in the case of proceedings of an ancient date, it might be presumed from the regularity of the subsequent proceedings, from the acquiescence of parties interested or from other circumstances, that the records upon the books of a proprietary were made by the clerk, either duly elected or *de facto* exercising the office; but no such presumption can be properly allowed where the

transactions recorded are of recent date and the facts admit of ready proof. It was therefore necessary to introduce some evidence tending to show that the supposed clerk acted as such under claim of an election to the office, *beyond the mere fact of making the records in question.*"  34 N. H. 154. In *Hall* v. *Manchester*, the same principle was announced. The record failed to show that the selectmen had been elected and their acts in laying out a highway were attempted to be upheld by showing that they acted as such during the year. The only evidence offered was "that two of them undertook to lay out the highway in question." The court said: "There is nothing else in the whole case tending to show that they acted in that capacity and their authority to do that one act is disputed here, *and is the very question now in controversy;* and to hold that this act furnished any evidence of their authority to act would be begging the whole question." 39 N. H. 301.

While it is an established principle that the acts of all public officers having the presumptive evidence of title by law, commission, election, or otherwise, and the actual peaceable possession of office, are valid as far as they affect the interests of the public or of third parties; yet, we think, as was held in *Vaccari* v. *Maxwell*, " that the decisions in relation to the acts of officers *de facto* are reasonably to be restricted to those who hold office under some degree of notoriety, or are in the exercise of continuous official acts, or are in possession of a place which has the character of a public office." 3 Blatch. 377. If the opposing trustees had acquiesced in the selection of Lyle, and allowed him, without objection, to vote upon the removal of respondent and the election of relator, then it might be claimed with some degree of reason, supported by authority, that he was a *de facto* officer; and if Curtis had surrendered up his authority and allowed Corey to act, then the latter would have been superintendent *de facto*, and all his

acts as such would have been binding upon the corporation, although he had not been legally elected to the position.   But by what parity of reasoning can it be said that Lyle had any authority to bind the corporation?   He was not elected trustee.   He did not have even the color of an election.   The very record offered for the purpose of proving his election shows affirmatively that he was actually defeated, not having received a majority vote.   He did not have even "an apparent or *prima facie* right" to act as a trustee.   His right to vote was denied.   Neither the interests of the public nor the rights of third parties were involved or in any way affected by the proceedings.   The whole contest is narrowed down to a proposition between two opposing factions equally divided in number as to which shall have the control and managment of the property owned by the corporation.   None of the reasons which invoke the protection of the law in order that the ends of justice may be attained can here be urged.   The respondent being entitled to the position he holds, it follows that the writ must be denied.

It is so ordered.