[No. 1099.]

# ORR WATER DITCH COMPANY, Appellant, *v.* RENO WATER COMPANY, Respondent.

Corporation—When Trustees of, Cease to be Officers.—In March, 1876, five persons were elected trustees of the Reno Water Company. In April, 1876, they and the other stockholders sold the entire stock of the corporation to George B. Hill, and delivered to him all the real and personal property thereof. Hill remained in the actual possession and continued openly to use and manage the same until 1879, when he disposed of his interest to other parties. During this time the Reno Water Company held no election of trustees. The trustees elected in March, 1876, did not resign, but they did not pretend to do any business or act as trustees of the corporation after closing up their accounts at the time of the sale in 1876, until June and July, 1876, when a majority of them met and allowed an account and drew a check for one thousand one hundred and thirty-eight dollars and sixty-five cents, in favor of the Orr Ditch Company: *Held*, that at the time this check was drawn the persons claiming to be trustees were not officers of the Reno Water Company, either *de jure* or *de facto*, and that the corporation could not be held liable for their acts.

Appeal from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*Lewis & Deal*, for Appellant :

I. An account stated is conclusive between the parties, and can only be impeached for fraud or mistake—something that is neither pleaded nor relied on by the defendant in this case. (*Lockwood* v. *Thorne*, 11 N. Y. 170; *Branger* v. *Chevalier*, 9 Cal. 353.)

II. The persons drawing the check were trustees of the corporation. They were duly elected, entered upon the discharge of their duties, constructed some portions of the Reno Water Works, and never resigned; nor were any successors elected until after the making of the draft. Those facts, with the legal proceedings to remove them, all fully justify the jury in finding that they were trustees. Now, if these persons were not trustees, we wish to ask the court whether they ceased to be so as to third persons. Did they cease to be so when their year expired ? Certainly not; for it must be admitted that they would, under our law, hold until their successors were elected. Was it when they agreed to resign ?

Certainly not ; for the very necessity of resignation admitted by Hill was an admission that they were the legal trustees. Was it when they ceased to hold stock ?   It would be a novel ruling that a third person could be affected in his dealings with a corporation by the fact that the trustees, or some of them, had ceased to be stockholders.   The rule is cardinal and general that a third person has the right to deal with those who act and are allowed to act as trustees, and that the corporation cannot take advantage of any disability or the want of qualification in any of them.

III. Mere inaction never dissolves a corporation nor in any way affects its existence (2 Douglas, Mich., 124; 5 John Ch. 366), and even if such were the case neither a private individual nor the corporation itself can ever take advantage of that.   It is never dissolved by inaction, except upon a direct proceeding on behalf of the state.   (*People* v. *Turnpike Road*, 23 Wend. 254; *Mickles* v. *Bank*, 11 Paige 118; Angell and Ames, sec. 776.)   And, clearly, if the corporation is not dissolved, then the officers hold their positions, otherwise there would be no corporation.   (Ang. & Ames on Cor., sec. 770; *Newton M. Co.* v. *White*, 42 Geo. 148.)

*P. Evans* and *Robert M. Clarke*, for Respondent :

I. If there be substantial testimony in the record supporting the order of the judge granting the new trial, the order should be affirmed.   (*Phillpots* v. *Blasdel*, 8 Nev. 61.)

II. At the time the account was stated and check drawn, Leete, Lee, Manning, McFarlin and Wilson were not trustees of respondent, nor was Leete president nor Manning secretary.   1. They did not take and subscribe the official oath after their election in 1876.   (2 Comp. Laws, 3393.)   2. Their term of office expired in March, 1877, and they were not thereafter elected. (2 Comp. Laws, 3394.)   3. After June, 1876, they ceased to be stockholders.   (2 Comp. Laws, 3393.)   4. They resigned their offices and turned over to Hill the property of the corporation, and ceased to act; and at least two of the four who did the acts complained of say that they did not consider themselves trustees at the time.   From the failure of Leete, Manning, Lee and others to perform any

official duties an abandonment or resignation will be presumed. (*Bartholomew* v. *Bentley*, 1 Ohio St. 37.)   5. The power to choose or have trustees was suspended by the purchase of all the stock by Hill.   Hill, having all the stock, was the only person qualified to be a trustee.   There could therefore be no election and no *de jure* trustees.   (2 Comp. Laws, 3393; Ang. & Ames on Corp., sec. 144, 878; 2 Kyd on Corp. 448; *Trustee* v. *Zanesville Canal*, 9 Ohio, 203; *Penobscot Boom Co.* v. *Lamson*, 16 Me. 224; *Boston Glass Mnf.* v. *Langdon*, 24 Pick. 52.)

III. At the time the account was stated and the check drawn, Leete, Manning, Lee and McFarlin were not *de facto* trustees of defendant.   A *de facto* officer is one who performs the duties of an office under claim and color of right.   (*State ex rel.*, *Corey* v. *Curtis*, 9 Nev. 325, 338.)

IV. The court erred in admitting the disputed acts to prove authority to do the acts in question to prove that Leete and others were *de facto* officers at the time.   This proof was clearly incompetent.   (*State* v. *Curtis*, 9 Nev. 325, 340, 341; *State* v. *Wilson*, 7 N. H. 543; *Goulding* v. *Clark*, 34 N. H. 154; *Hall* v. *Manchester*, 39 N. H. 301.)   The argument is supremely absurd that the act complained of can be admitted to prove itself—that a usurper can establish his authority by the act of usurpation.

By the Court, HAWLEY, J.:

Appellant is a corporation owning a water ditch for irrigating purposes.

Respondent is a corporation and supplies water to the citizens of Reno.

This action was brought to recover one thousand one hundred and thirty-eight dollars and sixty-five cents upon a check signed by B. F. Leete, as president, and A. H. Manning, as secretary, of the Reno Water Company, and upon an account stated for that amount.

It appears that in 1875 a contract was made between the parties to this suit, whereby the plaintiff agreed to furnish a certain quantity of water to the defendant, and, in consideration thereof, the defendant agreed to keep a portion of plaintiff's ditch in repair.

It is claimed by plaintiff that it furnished the water; that defendant did not keep the ditch in repair, and that plaintiff expended, for that purpose, the amount for which the check was given.    The complaint contained a count for money paid out and expended by plaintiff for defendant's use; but this count was abandoned at the trial, and is not relied upon.

At the trial the court ruled out the evidence offered by the defendant to show that the contract had been performed, and that there was nothing due to plaintiff thereon, upon the ground that the account stated was conclusive between the parties.

Plaintiff obtained a verdict, and the court granted a new trial, upon the ground that the evidence was insufficient to sustain the verdict.    The appeal is taken from this order.

There are several questions presented as to whether or not the court erred in admitting evidence and giving certain instructions; but the real question touching the merits of this controversy is, whether the persons who stated the account and drew the check were officers of the Reno Water Company and had authority to act for and bind the corporation.

In March, 1876, B. F. Leete, A. H. Manning and three others were regularly elected trustees of the Reno Water Company.    It is not affirmatively shown that they ever qualified by taking and subscribing the official oath required by law (1 Comp. L. 3393); but, for the purposes of this decision, that fact may be treated as immaterial.    Leete was elected president and Manning was elected secretary.

In April, 1876, the trustees and other stockholders sold the stock of the corporation to George B. Hill.    At the time of the sale the trustees informed Hill "; that there was some little indebtedness against the corporation, which they wanted to meet and adjust and pay from the funds on hand in the treasury of the company."    On the twenty-first of April, 1876, they met in their official capacity as trustees and transacted this business, and then delivered to Hill all the real and personal property of the corporation, and he took actual possession thereof, and, through his agents, continued openly to use and manage the same in his own right until 1879, when he

disposed of his interest therein to other parties. During the time that Hill owned the stock the Reno Water Company held no election of trustees. The trustees elected in March, 1876, did not resign; but from the time of the delivery of the property to Hill until the doing of the acts in question, in June and July, 1879, they owned no stock, and did no act as trustees or officers of the corporation.

Leete and Manning, subsequent to the sale of their stock to Hill, became, and at the time of the allowance of the account and drawing of the check in question, were trustees of the Orr Water Ditch Company. The controlling question is not, as argued by appellant's counsel, whether the Reno Water Company, as a corporation, was dissolved by the inaction of its trustees; but whether the persons claiming to be trustees were officers either *de jure* or *de facto*.

We see no difficulty in disposing of these questions. The law in relation thereto is well settled.

When the trustees sold and delivered all their stock to Hill, they ceased to be officers *de jure*, because they were no longer stockholders in the corporation. (2 Comp. L. 3393; *State ex rel. Rankin* v. *Leete*, 16 Nev. 242; *Bartholomew* v. *Bentley*, 1 Ohio St. 42.)

The reasons for the rule, which invokes the protection of the law in sustaining the acts of *de facto* officers in order that the ends of justice may be attained, do not exist in this case.

We had occasion in *State ex rel. Corey* v. *Curtis*, 9 Nev. 325, to carefully examine the questions relating to officers *de facto*, and we then said that "the principle of sustaining the acts of persons as officers *de facto* is designed as a shield for the protection of the public and of third persons, who are not cognizant of the true state of the facts, and are not required by law to inquire into the title of one who is found exercising the duties of a public office. In order to protect third persons transacting business with such officers under such circumstances as to induce them to believe that they are dealing with legal officers, the law has reached out its strong arm to a dangerous extent, upon the principle that, although not officers *de jure*, they were officers in fact whose acts public policy required should be considered valid. Such a principle certainly ought

not to be extended to a case where the rights of the public are not affected, nor where all the parties interested have knowledge that the person pretending to be an officer is not an officer *de jure;* for in such a case the reason of the rule no longer exists, and the law should not be invoked for protection."   (339.)

"The *de facto* rule," said the court of appeals of Missouri, "is based upon public policy.   It is adopted as a necessity to preserve the rights of third persons and the organization of society.   The doctrine is that where the citizen, being not at fault, trusts in his dealings to non-legal authorities in whom all believe, his rights are not to be destroyed."   (*Conway* v. *City of St. Louis,* 9 Mo. App. 490.)

This principle is conclusive against the right of appellant to recover and sustains the action of the court in granting a new trial.   From April 21, 1876, until June 14, 1879, the elected · trustees of the Reno Water Company owned no stock and did not pretend to act as trustees.   The public was not deceived. The plaintiff was not misled.   It was not induced to believe, from any pretended act of the trustees, that it was "dealing with legal officers."   The fact of the sale and delivery of the property of the corporation to Hill in 1876, and his possession and exclusive management and control thereof was continuous, open and notorious.   The plaintiff had actual knowledge of the facts.   The mere fact that the persons who had been elected trustees three years after they had disposed of their interests, met and allowed the account and drew the check in question, is not sufficient to bring the case within the rule applicable to *de facto* officers, and the proceedings which were instituted by Hill to remove the trustees, after the acts in question were performed, were inadmissible as evidence and ought to have been excluded at the trial.   (*State ex rel. Corey* v. *Curtis,* 9 Nev. 340, and authorities there cited.)

The persons who drew the check and allowed the account were not, after the twenty-first of April, 1876, until the doing of the acts in question in 1879, holding office as trustees under any degree of notoriety; they were not in the exercise of any continuous official acts; they were not in the possession of the property of the corporation or pretending in any manner to control or manage the same, and during all this time they did

no act which tended to lead the public, or the plaintiff, to believe that they were authorized to act for, or bind, the corporation.

The act of allowing the account and of drawing the check was a fraud upon the Reno Water Company which did not mislead or deceive the Orr Water Ditch Company, and it is not in a position to invoke the protection of the law in its behalf, and it is apparent that in equity and good conscience it ought not to recover in this action upon the counts relied upon at the trial.

The order of the district court granting a new trial is affirmed.