# V.

VACA (UNITED STATES v.). See Case No. 16,604.

## Case No. 16,810.

### VACCARI v. MAXWELL.

[3 Blatchf. 368.] [1]

Circuit Court, S. D. New York. Nov. 30, 1855.

CUSTOMS DUTIES—PROTEST—ASSESSMENT OF ADDITIONAL DUTY — FREIGHT AND COMMISSIONS — REAPPRAISEMENT — ACTS OF DE FACTO OFFICERS.

1. A protest "that no penalty of 20 per cent., under section 8 of the act of 1846, can be exacted except where the importer has added to his invoice price on entry," is a sufficient protest, under the act of February 26, 1845 (5 Stat. 727), to raise the question whether the collector is authorized to impose the penalty appointed by section 8 of the act of July 30, 1846 (9 Stat. 43), where no addition has been made by the importer to the value of his entry.

2. Under section 8 of said act of July 30, 1846, a collector has authority, upon an appraisement, to assess the additional duty for the undervaluation of purchased goods, which is there prescribed, although the importer has made no addition, in the entry, to the invoice value of the goods.

3. The cases of Goddard v. Maxwell [Case No. 5,492], and Morris v. Maxwell [Id. 9,834], cited and approved.

4. Where an invoice of lemons, though dated at Genoa, the place of departure of the vessel, stated the value of the lemons free on board at San Remo, which was a port 70 miles from Genoa, and on the track of the vessel to New York, and the chief market of the country for lemons, and added 2 per cent. commissions, and the lemons were taken on board at San Remo, and bills of lading were there signed, and the lemons were entered at New York as embarked from San Remo, and the invoice showed the true price of the lemons at Genoa and San Remo, and the public appraisers, and also appraisers on appeal, raised the invoice value, by adding the freight on the lemons from San Remo to Genoa, and also by increasing the charge for commissions, and, these additions increasing the invoice value by more than 10 per cent., an additional duty or penalty of 20 per

cent. was imposed, under section 8 of said act of July 30, 1846, which was paid under a protest "that the expenses of transportation from the place of original shipment to Genoa are not dutiable charges, that the reappraisement is illegal, because the price is made to include charges, and that no penalty can be exacted for addition of charges:" Held, that this protest was, in connection with the invoice, a sufficient protest, under the said act of February 26, 1845, to notify the collector that the valuation by the appraisers of the charges of transportation between Genoa and San Remo was complained of.

5. The invoice and entry in a case may, ordinarily, be regarded as composing part of the protest.

6. The addition by the appraisers of the freight between San Remo and Genoa, was, under the circumstances, illegal.

7. The imposition of the additional duty or penalty of 20 per cent. under the said 8th section, in consequence of the addition of the freight and the increase of the commissions, was illegal.

8. Freight and commissions, although dutiable items, in proper cases, are not, under said eighth section, the subjects of penal duties in themselves, nor, by being added to the value of imports, can they be the means of imposing a penalty on the latter.

9. A clause in the protest, "that the merchant appraiser was not legally sworn in," when considered in connection with the oath annexed to the appraisal, which was before the collector, and showed that the merchant appraiser was sworn by an official appraiser, was a sufficient protest to the collector, under the said act of February 26, 1845, to raise the question as to the legality of such oath.

10. The reappraisement, which was made under section 17 of the act of August 30, 1842 (5 Stat. 564), was illegal and void, because the merchant appraiser was sworn by the official appraiser.

11. The rule that the acts of a de facto public officer are valid in regard to third persons, and cannot be questioned collaterally, although he has failed to give a bond or take an oath when required, is restricted to those who hold office under some degree of notoriety, or are in the exercise of continuous official acts, or are in possession of a place which has the character of a public office.

[Cited in Waterman v. Chicago & I. R. Co., 139 Ill. 666, 29 N. E. 691; State v. Roberts, 52 N. H. 496; Washington v. Nichols, 52 N. Y. 485.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

This was an action against [Hugh Maxwell] the collector of the port of New York, to recover back an excess of duties and a penalty. The jury found a verdict for the plaintiff [Joseph Vaccari], subject to the opinion of the court on a case.

John S. McCulloh, for plaintiff.
J. Prescott Hall, for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The plaintiff imported a shipment of lemons from Sardinia, and entered them at this port as embarked at San Remo. The cargo was laden on board at that port, and bills of lading were there signed. The invoice was dated at Genoa, where the vessel lay at the time, and stated the value of the lemons per box free on board at San Remo, adding two per cent. commissions to the amount. The latter port is seventy miles distant from the former, and on the track of vessels to New York, and is one of the principal, and, on the proofs given in this case, the chief market of the country for that product. It was also proved that the invoice represented the true price of lemons at Genoa and San Remo. The usual freight of lemons between San Remo and Genoa is from three to three and a half francs per box.

On the arrival of the vessel at this port, entry was made of the shipment, at the invoice valuation. The public appraisers raised the value of the lemons three francs per box. The plaintiff gave the notice required by law of his dissatisfaction with that appraisal, and the collector nominated a merchant appraiser to act with one of the general appraisers on the appeal. These proceedings were in conformity with the provisions of the 17th section of the act of August 30, 1842 (5 Stat. 564), and of the 3d section of the act of March 3, 1851 (9 Stat. 630). The general appraiser and the merchant appraiser united in adding to the invoice value of the lemons three and a half francs per box, and one-half per cent. commissions, being one-half of a franc increase in the appraiser's valuation, and also one-half per cent. in the commissions. This last appraisement, if legally made, became final, and fixed the true value of the goods at the period of their exportation. The additions made by the appraisement to the invoice prices raised the entry more than 10 per cent., and the defendant assessed duties according to that valuation, and also imposed a penalty of 20 per cent. on account of the excess. The duties and penalty were paid by the plaintiff, under a protest in writing and print, made by him at the time.

This protest is objected to as not fulfilling the requirements of the act of February 26, 1845 (5 Stat. 727), and as failing to point out distinctly and specifically the grounds of objection to the payment of the duties exacted. The first part of the protest consists almost entirely of matters having no relevancy to the questions raised in this case; but we think that the written clause specifies, with adequate precision, at least one objection, on which the plaintiff is entitled to the judgment of the court; and we are disposed to hold it to be, in its other particulars, legally sufficient—connected, as it must have been, with the actual transaction, in the view of the collector. It is in these words: "I claim that the merchant appraiser was not legally sworn in, and that the expenses of transportation from the place of original shipment to Genoa are not dutiable charges; that the reappraisement is illegal, because the price is made to include charges; that no penalty can be exacted for addition of charges; and that no penalty of 20 per cent., under section 8 of the act of 1846, can be exacted, except where the importer has added to his invoice price on entry." This latter clause, we think, complies with the most rigid requirement of the act of 1845; and it presents the question, whether the collector had authority, in law, to impose on these goods the penalty appointed by the 8th section of the act of July 30, 1846 (9 Stat. 43), there having been no addition made by the plaintiff to the value of his entry. Assuming that the appraisement was regular in form, and that it exceeded, by 10 per cent. or more, the invoice value, and that thereby the importation became liable to an extra duty or penalty, the question is, whether the act of 1846 applies to the case, and authorizes the one exacted by the defendant?

It is enacted, by the 8th section of that act, "that it shall be lawful for the owner, consignee or agent of imports which have been actually purchased, on entry of the same, to make such addition, in the entry, to the cost or value given in the invoice, as, in his opinion, may raise the same to the true market value of such imports in the principal markets of the country whence the importation shall have been made, or in which the goods imported shall have been originally manufactured or produced, as the case may be, and to add thereto all costs and charges which, under existing laws, would form part of the true value at the port where the same may be entered, upon which the duties should be assessed. And it shall be the duty of the collector within whose district the same may be imported or entered, to cause the dutiable value of such imports to be appraised, estimated and ascertained, in accordance with the provisions of existing laws; and, if the appraised value thereof shall exceed, by ten per centum or more, the value so declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected and paid, a duty of twenty per centum ad valorem on such appraised value; provided, nevertheless, that. under no circumstances, shall the duty be assessed upon an amount less than the invoice value, any law of congress to the contrary notwithstanding." In the case of Goddard v. Max-

well [Case No. 5,492], this court held, that an importer of purchased goods was subject to pay an additional duty of twenty per cent., when the invoice was raised by appraisement more than ten per cent., although the importer had not added to their value on entry. We regard the provision in the section above quoted, as conferring a privilege which the importer may omit to claim, at his option. We do not think that the law prescribes a course of proceedings as necessary to be taken by an importer, in order to bring his goods within the object and scope of that statute, and subject them to a penalty. Morris v. Maxwell [Id. 9,834]. Taken in conjunction with the 16th and 17th sections of the act of August 30, 1842 (which remain substantially in force), the enactment in question goes to relieve an importer from a penalty consequent upon an undervaluation in his invoice, by enabling him to make an addition to that value on his entry. If the addition leaves the price more than ten per cent. below the market value, then the penalty is to be enforced, as it would have been had the entry corresponded with the invoice. The supreme court inclines to the opinion that the 8th section of the act of 1846 only changes the law in respect to the penalty under the act of 1842, by a diminution of its amount from 50 to 20 per cent.; and that, in other respects, its provisions are tantamount to those of the act of 1842. Ring v. Maxwell, 17 How. [58 U. S.] 147, 150.

It is not necessary, in this case, to adopt or discard the decisions of this court before referred to, there being other points upon which the present decision will be placed. We advert to the point, to show that our attention has been directed to the distinction made on the argument, and to say that, although, on a critical reading of the provision in question, there may be ground to question our interpretation, we are, as advised at present, inclined to adhere to our construction, as meeting the intention and purpose of the enactment. And, in accordance with the ruling in Goddard v. Maxwell, we hold, in this case, also, that the collector had authority, upon the appraisement, to assess the additional duty, the goods being purchased goods, although the importer made no addition to his entry.

We consider the protest against charging the expense of transportation between Genoa and San Remo, because not a dutiable charge, to be sufficiently distinct and specific to satisfy the act of 1845, by the aid of the invoice, upon which the collector ordered the appraisement. That states that the lemons are to be delivered free on board at San Remo, and, therefore, independently of the bill of lading, was direct and clear notice to the defendant, that San Remo was the port of shipment, and that the plaintiff claimed he had rightfully entered the goods at the invoice price. The appraisers reported that, by the invoice annexed, the goods were imported from Genoa, and were so valued by them. This was a palpable misunderstanding of the invoice; and we think the assertion of the protest, "that the expenses of transportation from the place of original shipment to Genoa are not dutiable charges," was a sufficiently precise notice to the defendant, that a valuation, by the appraisers, of the charges of transportation between those places, was the error complained of. The testimony proves that that difference between the invoice and the appraisement is simply the price of transportation or freight between those places, and that the invoice value of the goods is the true one, in respect to both of those ports.

The protest is a mercantile and not a legal instrument, and, when its meaning is unmistakably plain, its phraseology will not be scrupulously criticised by the courts. Swanston v. Morton [Case No. 13,677]. We have always required that the collector shall have, by it, direct and certain notice of the grounds of objection to the duties assessed, but it never has been determined, as indispensable, that the entire notice must be incorporated in the protest. The invoice and entry may, ordinarily, be regarded as connected with and composing a part of the protest, being the things out of which the protest arises, and to which it relates.

The subject of appraisal, under the 16th and 17th sections of the act of 1842, is the actual market value or wholesale price of the goods, wares or merchandise imported and subject to duty. When that value is 'appraised, estimated and ascertained," to such value or price are to be added all costs and charges, except insurance, including in every case a commission at the usual rates. These united compose the true value upon which duties must be assessed. Section 16. A reappraisement is to be made agreeably to the same provisions. Section 17. The 8th section of the act of 1846 requires the dutiable value of the imports to be appraised, estimated and ascertained in accordance with the provisions of existing laws, and provides that, if the appraised value thereof shall exceed, by ten per cent., &c., then, &c. We think that the true interpretation of this clause limits an appraisal under it to the goods imported; and, although it speaks of "dutiable value," as the subject of appraisement, we think that that expression is to be understood in the same sense in which it is used in the act of 1842, and does not comprehend the freight or commissions added thereto by the appraisers, as being subject to appraisal as part of the foreign market value of the invoice. We think that, if these goods had been transported from San Remo to Genoa, and been shipped at the latter port, though the value of freight or commissions would have been dutiable items, yet they would not have been, in themselves, subjects of penal duties. Nor, by being added to the value of the imports, can they be the means of imposing 20 per cent. additional duties on the latter. In our opinion, therefore,

on both of these points, the exaction of penal duties in this case was unauthorized by law.

The remaining ground assigned in the protest is, "that the merchant appraiser was not legally sworn in." We should not regard this, standing by itself, as a distinct specific notice to the collector, that the oath had been administered to the merchant appraiser by an official appraiser. The collector was entitled to be pointed to the officer whose authority was excepted to, that he might make the appropriate inquiry and examination into his competency, and have the error rectified, if one had been committed. We find, however, as part of the case, the invoice, entry; oath of the merchant appraiser, appraisement, and protest, connected with each other; and we are bound to assume that, as the invoice, entry and protest would necessarily be before the collector when the duties were imposed, the oath annexed to the appraisal was also before him. The protest would thus necessarily indicate to him the manner in which the merchant appraiser had been "sworn in." We feel the more constrained to adopt this presumption, for the reason that, for a considerable period, the court has been judicially cognizant of the fact, that the official appraisers were in the practice of administering the prescribed oath to merchant appraisers, and that the legality of that practice has been a subject of question at the custom-house and in this court. The objection to the competency of an appraiser to administer such oath has been repeatedly made and debated in this court within the last two years, but in no case has the protest been so shaped as to require the court to decide the question. We considered it our duty, however, to have an intimation given to the collector that we could find no authority in law for the administration of the oath by an appraiser. We think that the present protest, in connection with the other papers accompanying it, furnished to the collector a sufficiently precise statement of the ground of objection, to call upon us to determine whether the power to administer such oath existed in the official appraisers.

The 20th section of the act of March 2, 1799 (1 Stat. 641), directs that all officers and persons to be appointed pursuant thereto, shall, before they enter upon the duties of their respective offices, take and subscribe an oath or affirmation, to be taken before the collector. The 52d and 66th sections of the same act (Id. 666, 677), direct merchant appraisers, appointed to examine damaged goods, or those not accompanied with the original invoice, or suspected to be fraudulently invoiced, to be sworn or affirmed before the collector. The acts of July 31, 1789 (Id. 41, 42, §§ 16, 22), and August 4, 1790 (Id. 166, 169, §§ 37, 46), contain similar provisions. The official appraisers created under the act of March 1, 1823 (3 Stat. 735, § 16), being officers under the general revenue laws, would necessarily take the oath prescribed for them, in the manner directed by those laws, no different method being appointed in the latter act. The additional official appraiser authorized by the act of May 28, 1830 4 (Stat. 409, § 1), to be appointed for the port of New York, was to be qualified in the same manner.

Although the law is peremptory, that all custom-house officers shall be duly sworn or affirmed, before entering upon the duties of their offices, yet such provisions in respect to public officers have not been regarded by the courts as conditions precedent to their rightful authorization, or more than merely directory. The current of decisions, in respect to public officers appointed or elected, is, that their acts are valid in regard to third persons, and cannot be questioned collaterally, although they fail to observe the positive prescriptions of law to give a bond or take an oath before entering upon the exercise of their offices. Nason v. Dillingham, 15 Mass. 170; Bucknam v. Ruggles. Id. 180; Town of Plymouth v. Painter, 17 Conn. 585; People v. Stevens, 5 Hill, 616, 630; People v. Hopson, 1 Denio, 574, 579; People v. Covert, 1 Hill, 675; Weeks v. Ellis. 2 Barb. 324; Margate Pier Co. v. Hannam, 3 Barn. & Ald. 266.

We think, however, that the decisions in relation to the acts of officers de facto, are reasonably to be restricted to those who hold office under some degree of notoriety, or are in the exercise of continuous official acts, or are in possession of a place which has the character of a public office. The revenue laws look to the employment of others than strictly custom-house officers, in the collection of the revenue. The 20th section of the act of March 2, 1799, before cited, seems to make a distinction between officers and persons employed in that service, and requires each to take an oath of office. Merchants called in by the collector to estimate the value of merchandise, take no rank as public officers. Greely v. Thompson, 10 How. [51 U. S.] 225, 241. They rather hold the position of referees, or trustees, charged with the performance of a single act, or appointed to act in an individual case. We think that the statute in question is mandatory, and that the acts of a merchant appraiser, done without the sanction of an oath, are both irregular and void. Bryan v. Walton, 14 Ga. 185; 2 Grah. New Tr. (by Waterman) 196, notes.

The appraisement made and reported by the general appraiser and the merchant appraiser, which, in this case, was the basis of the duties imposed and collected, was, we think, without authority, and affords no protection to the defendant in this suit.

Judgment for plaintiff.

---

VAIDEN (NORDLINGER v.). See Case No. 10,296.

VAIL (AMERICAN MIDDLINGS PURIFIER CO. v.). See Case No. 308.