DANIEL B. WATERMAN

*v.*

THE CHICAGO AND IOWA RAILROAD COMPANY.

*Filed at Ottawa January 18, 1892.*

1. OFFICE AND OFFICERS—*officers de facto and de jure—salary.* In a suit by one claiming to be an officer of either a public or private corporation, for the salary or compensation belonging to such office, his title to the office is in issue, and if that be defective, and another has the real right, the plaintiff can not recover. He must show that he is an officer *de jure*, though under some circumstances a certificate of election or commission may be *prima facie* or even conclusive evidence of a *de jure* right.

2. A *de facto* officer is to be distinguished on the one hand from a mere usurper of an office, and on the other hand from an officer *de jure*. He is one who is in the actual possession of an office under claim and color of an election or appointment, and in the exercise of its functions and in the discharge of its duties. He must appear to the public to be an officer, by being in the possession of the insignia of the office, and be reputed as an officer in fact.

3. A board of directors of a railway company elected at a time and place other than that fixed by the by-laws of the corporation, without the possession of the records, books, papers and seal of the company, whose right to the office was disputed, as having no possession or control of its property or control of its management, and against whom legal steps were taken to oust them from office, appointed one of their

number president: *Held,* that such board of directors were not such *de facto* officers as to authorize them to elect a president; and the fact that a majority of such directors who were legal officers holding over were present, did not make their appointment legal when the other lawful directors were not notified of or present at the meeting.

4. The election of a president of a railway corporation by persons assuming to be a board of directors, but which is neither a *de jure* nor a *de facto* board, is not legal, and will not entitle such appointee to any salary in compensation for his services.

5. QUO WARRANTO—*judgment conclusive against officers.* A judgment in an information in the nature of a *quo warranto,* finding that persons claiming to be directors of a railway company were not legally elected, and ousting them from such office of directors, is conclusive on the defendants in the proceeding.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding.

Mr. CHARLES WHEATON, for the plaintiff in error:

An officer *de facto* in possession of the office, and exercising its functions under color of right, is entitled to the aid of *mandamus* to compel payment of his salary, notwithstanding there is a conflicting claimant to the office; and upon such application the court need not investigate actual legal title to the office. High on Ex. Legal Rem. secs. 108-113; *State* v. *Clark,* 52 Mo. 508; *Leach* v. *Cassidy,* 23 Ind. 449.

That the acts of *de facto* officers are good, see *Railroad Co.* v. *Railroad Co.* 75 Ill. 113; *Lawson* v. *Kolbenson,* 61 id. 418; *People* v. *Callaghan,* 83 id. 128; *Trumbo* v. *People,* 75 id. 561; *Blake* v. *People,* 109 id. 504.

There being an acting *de facto* corporation, its existence and the authority of its acting officers can only be questioned by a proceeding by *quo warranto.* *Marsh* v. *Astoria Lodge,* 27 Ill. 421; *Trustees* v. *Thompson,* 20 id. 197; *Coles County* v. *Allison,* 23 id. 437; *Tisdale* v. *Minonk,* 46 id. 9; *Kettering* v. *Jacksonville,* 50 id. 39; *Mitchell* v. *Deeds,* 49 id. 416; *Geneva*

v. ·Cole, 60 id. 397; *Lawson* v. *Kolbenson,* id. 405; *Trumbo* v. *People,* 75 id. 562; *People* v. *Newberry's Estate,* 87 id. 41; *Alderman* v. *School Directors,* 91 id. 179; *Osborn* v. *People,* 103 id. 224.

As to who is an officer *de facto,* see 2 Hale's P. C. 24.

Mr. M. D. HATHAWAY, for the defendant in error:

To constitute a person an officer *de facto,* he must be in the actual possession of the office and in the exercise of its functions and in the discharge of its duties. When the officer *de jure* is also the officer *de facto* the lawful title and possession are united. Then no other person can be an officer *de facto* for that office. Two persons can not be officers *de facto* for the same office at the same time. *McMahon* v. *Commissioners,* 8 Kan. 442; *Morgan* v. *Quackenbush,* 22 Barb. 80.

Hinckley was elected president of the company in 1879. No valid election was held in 1880. There is no evidence that Hinckley resigned or was removed by action of the board of directors. He held over after the expiration of his term, under his appointment, until March, 1882, and during all that time held the office and performed all the duties required of him as president.

There is no controversy as to the law that the acts of *de facto* officers are valid so far as they concern the rights of third persons or the public. It is claimed by counsel that plaintiff in error comes within this rule,—in other words, that he is a third person. Plaintiff in error claimed to be a director under the pretended election of 1880.

Plaintiff in error brings this suit to recover for salary, and it is incumbent upon him to establish the fact that he was an officer *de jure. Andrews* v. *Portland,* 79 Me. 484; *McCue* v. *Wapello County,* 56 Iówa, 698; *Douglas* v. *State,* 31 Ind. 429; *Lawler* v. *Alton,* 8 id. 160; *Comstock* v. *Grand Rapids,* 40 Mich. 397; *Woodsey* v. *Smith,* 28 Cal. 21; *Bier* v. *Gorrell,* 30 W. Va. 95.

Mr. JUSTICE BAKER delivered the 'opinion of the Court:

In this action of assumpsit, Waterman, plaintiff in error, seeks to recover from the Chicago and Iowa Railroad Company, defendant in error, his salary as president of said corporation for a period of about two years, at the rate of $5000 per annum. The issues were tried in the circuit court before the judge and without a jury, and the questions of law and mixed questions of law and fact involved in the controversy were amply preserved by exceptions to the rulings made on the various propositions submitted. The judgments of the circuit and Appellate courts were against Waterman, and he brought the record here by this writ of error.

At the annual meeting of the stockholders of the railroad company, held in March, 1879, Joseph Reising, Daniel B. Waterman, George W. Kretzinger, B. T. Lewis, F. E. Hinckley, P. B. Shumway and Joseph K. Barry were elected directors of the corporation, and said directors elected F. E. Hinckley president of the company, and also elected a vice-president and secretary. On January 3, 1880, Lewis resigned his office of director, and R. G. Montony was appointed a director in his place and stead. The by-laws of the company provided for an annual meeting of its stockholders, to be held at the office of the company, in the city of Chicago, Illinois, on the first Wednesday in March, in each year, and for an election by them at that time of a board of seven directors, who were to hold office until the next annual election and until their successors were elected. On Wednesday, the third day of March, 1880, various persons met at said office for the purpose of holding said annual meeting, and among them were Hinckley, the president, and all of the directors. Immediately before a meeting was organized an injunction was served, which restrained the voting of certain stock. Thereupon Reising and Montony organized and held what purported to be the annual meeting of the stockholders. They were neither of them stock-

holders, and neither of them had proxies to vote any stock. The town of Aurora was the owner of 1000 shares of the capital stock of the corporation, and Joseph Reising, supervisor of the town, voted 993 of said shares for Daniel B. Waterman, Joseph Reising, R. G. Montony, L. D. Brady, E. R. Allen, Holmes Miller and William McMicken for directors, and they receiving all the votes cast, were declared elected.

The by-laws provided that the directors elected at the annual meeting should, at their first meeting thereafter, to be called as soon as might be and as soon as a quorum could be convened, proceed to organize the board by the election of a president, vice-president and secretary of the company, to hold office during the pleasure of the board, and that the board of directors should have authority to fill all vacancies that should occur therein, occasioned by death, resignation or otherwise. They also provided : "Regular meetings of the board of directors shall be held at the office of the company, in the city of Chicago, on the first Thursday of every month, at ten o'clock in the forenoon."

On the 4th day of March, 1880,—which was the first Thursday in that month,—the seven directors who had been elected, as above stated, on the preceding day, met "at the office of R. G. Montony, at 97 Clark street, in room 27," and at that meeting McMicken resigned the office of director, and George W. Kretzinger was elected to fill his place. Thereupon said directors, they all being present, elected Waterman president of the company, and also elected a secretary and a treasurer, and an executive committee. Several motions in regard to the business affairs of the company were also made and carried at that meeting. Said directors also held meetings on March 19, April 23, May 28 and June 21, 1880, and on several subsequent days, at which meetings considerable business was done, such as adopting motions and resolutions, appointing officers and attorneys, ordering the payment of various sums of money to various persons, etc.

At the time of said elections in 1880, the railroad of defendant in error was in the hands of and operated by a receiver appointed by the Circuit Court of the United States for the Northern District of Illinois in a foreclosure suit, but a petition was pending in said court which claimed that the company was entitled to have the road turned over to it. On June 19, 1880, the receiver, in conformity with an order of the court, surrendered the road to the company by delivering it to Waterman, Montony, Reising and Kretzinger, who were a majority of the board of directors, whether the elections of 1880 be regarded or not. Four days thereafter, on June 23, 1880, the road was again placed in the hands of a receiver, and remained in the hands of a receiver, and was operated by him, until after F. H. Head was elected president of the company, in 1882.

On March 28, 1880, an information in the nature of a *quo warranto*, on the relation of Hinckley, Shumway and Barry, who had been elected directors in 1879, was filed in the Criminal Court of Cook county, against Reising, Waterman, Montony, Kretzinger, Brady, Allen and Miller, and on the 19th day of March, 1881, a final judgment was rendered in said suit, wherein it was "ordered and adjudged by the court that Montony, Waterman, Reising, Kretzinger, Brady, Miller and Allen be and they are ousted from the office of directors of the Chicago and Iowa Railroad Company, and from exercising any of the privileges, functions and franchises of the office of directors under the election for directors of said company alleged to have been held on the first Wednesday of March, A. D. 1880; but this judgment does not in any manner affect the rights of defendants acquired under the election for directors in March, 1879." The substance and meaning of this final judgment is, that Allen, Miller and Brady are absolutely ousted from their offices of directors of the railroad company, but that Montony, Waterman, Reising and Kretzinger are merely ousted from exercising any privileges, functions and franchises of di-

rectors by virtue of the election of March, 1880, and are left clothed with whatever rights they may have acquired prior thereto.

At the meeting held on May 28, 1880, by the seven persons alleged to have been elected directors on the third day of that month, a motion fixing the salary of the president of the company at $5000 per year was adopted. Plaintiff in error claimed to be president of defendant in error, and performed some acts as such, until one F. H. Head was elected president on the 15th day of March, 1882. During the whole of said time Hinckley also claimed to be president of the company by virtue of his election in 1879, and also performed some acts as such.

One of the contentions of plaintiff in error is, that the election of March 3, 1880, was a valid election, and that by means thereof Waterman, Reising, Montony, Brady, Allen, Miller and Kretzinger became and were the lawful and rightful directors of the corporation. It is a sufficient answer to this claim to say that it was decided otherwise in the *quo warranto* suit, and that plaintiff in error was a party to the judgment rendered therein, and is bound thereby.

It is claimed that, at all events, each and every one of the persons last named came into office under color of an election, and was therefore a director *de facto,* and the board, at the least, a *de facto* board of directors when it elected Waterman president. And it is also claimed in that behalf, that the appointment or election of an officer by a *de facto* officer or by *de facto* officers is a valid appointment or election, and constitutes the person so appointed or elected a *de jure* officer. The charter of the railroad company provides for the "election of a board of directors for the management of the business of the company." The by-laws provide for the election of "a board of seven directors;" that "the directors so elected shall, at their first meeting thereafter, to be called as soon as may be and as soon as a quorum can be convened, proceed to organize

the board by the election of a president, vice-president and secretary of the company;" that "the board of directors shall have authority to fill all vacancies that may occur therein, and that four directors shall constitute a quorum for the transaction of business. They also provide for regular meetings of the board of directors, and for special meetings to be called by the president or by any three members of the board, "allowing for due notification of the members, not less than two days." The expression "organize the board," etc., means simply that the board or body shall elect the designated officers. Said expression, and the expression "at their first meeting thereafter, to be called," and the other provisions of the by-laws above stated, clearly indicate that the president is to be elected by the board of directors acting as a body, and at a meeting of such board of directors. In 1 Beach on Private Corporations (sec. 224) it is said: "Even a majority of the directors, or all of them, acting separately, can not bind the corporation in regard to matters which they are only authorized to act upon as a board." And so the question arises whether or not the persons alleged to have been elected directors on March 3, 1880, were, when they assumed to elect plaintiff in error president of the company, a *de facto* board of directors, within the meaning of the rule which, under some circumstances, validates the acts of *de facto* officers.

A *de facto* officer is distinguished on the one hand from a mere usurper of an office, and on the other hand from an officer *de jure*. He is one who is in actual possession of an office under the claim and color of an election or appointment, and is in the exercise of its functions and in the discharge of its duties. In Angell & Ames on Corporations (sec. 287) it is said: "The best definition we have seen of an officer *de facto* is that given by Lord Ellenborough in *The King* v. *The Corporation of Bedford Level*, 6 East, 368." That definition is this: "An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not

a good officer in point of law." In *Vaccari* v. *Maxwell*, 3 Blatchf. 368, the court says: "We think, however, that the decisions in relation to the acts of officers *de facto* are reasonably to be restricted to those who hold office under some degree of notoriety, or are in the exercise of continuous official acts, or are in the possession of a place which has the character of a public office." In *State ex rel. Corey* v. *Curtis*, 9 Nev. 325, it is said: "In order to make a person an officer *de facto*, the law requires that he should in some way be put into the office, and that he should also have secured such a holding thereof as to be considered really in peaceable possession and actually exercising the functions of an officer."

On March 3, 1880, there were in the directory of the railroad company two antagonistic factions, each contending for the control of the corporation and the possession and management of its property. Hinckley, Shumway and Barry, members of the board elected in 1879, did not acquiesce in the election held on March 3, but immediately, and on the same day, consulted counsel and took steps to contest its validity, and claimed that they were still members of the board of directors, and that the board of 1879 was the lawful and actual board of directors of the company,—and, as we have heretofore seen, these contentions were afterwards judicially determined in their favor. The next day, Thursday, March 4, 1880, was the day fixed by the by-laws for the regular meeting of the board of directors, and the by-laws provided that it should be held at the office of the company, in Chicago. The board which claimed under the election of March 3 met on said next day, but at the offices of Montony instead of the office of the company. Montony, Reising, Waterman and Kretzinger, four of the *de jure* directors of the company, were present at said meeting, and they constituted a quorum of the *de jure* board. But the meeting was not at the place fixed for regular meetings, and the other three *de jure* directors were not present, and were not notified of the time and place of

such meeting. On the contrary, they were completely ignored, and the four directors above named met and acted with Brady, Allen and Miller.

The supposed board that thus met did not have possession or control of either the seal, the record books or the papers of the corporation. It did not have possession or control of its property, or control of the management of its railroad. Prior to the time it so met it had not exercised any functions or performed any acts incident to a board of directors. It did not meet in or have possession of the place which had the character and reputation of being the office of the company. It assumed to be the board of directors, but its claim was disputed by others who claimed to be directors, and it was not recognized by those who up to that date had been the president, vice-president, secretary and a majority of the executive committee of the corporation. It is impossible, then, that said board, elected only the day before, could have had the reputation of being the board of directors it assumed to be. The only official acts it claims to have performed prior to the election of president, was to accept the resignation of McMicken as director and appoint Kretzinger to fill the vacancy, and these were done at the same meeting with and immediately preceding such election. We do not regard them as of any significance as bearing upon the question of reputation or notoriety. Afterwards, and at the same meeting, said board appointed other officers and adopted various motions, and at subsequent meetings it adopted various other motions and resolutions, and procured a new seal and a new record book, and caused its proceedings to be recorded therein, and appointed attorneys, and did various acts of like character. These matters are unimportant so far as regards any contention that the election was binding on the corporation, on the ground that said board, when they made the election, had the reputation of being the board of directors of defendant in error. There should have been some evidences of prior acts of the board. (State ex rel.

v. *Curtis, supra; State* v. *Wilson,* 7 N. H. 543.) It can not fairly
be said that the board which elected plaintiff in error presi-
dent had such possession and control of the affairs of the
company as that it could be regarded to be in the peaceable
and actual exercise of the functions of a board of directors.
Nor does the mere fact of the presence of a bare majority or
quorum of the lawful directors at a casual meeting held at a
place other than that designated for regular meetings of the
board, and without the notification to the other rightful direct-
ors required by the by-laws for a special meeting, render the
act of such quorum effectual to bind the company and its
stockholders.

It is manifest from the holdings of the trial court upon the
propositions submitted to it, that it ruled that under the cir-
cumstances of the case the supposed board of directors which
assumed to elect plaintiff in error president of the railroad
company, was not, when it made such election, a *de facto* board
of directors, within the meaning of the rule which validates
some acts of *de facto* officers. In our opinion there was no error
in such ruling. Since the board of directors which elected
plaintiff in error president was neither a *de jure* nor a *de facto*
board of directors, it follows that plaintiff in error never be-
came or was the rightful president of the railroad company.

At the trial the court held, "that the plaintiff, to maintain
his action for salary as president, must show that he was such
officer *de jure* as well as *de facto.*" It is the legal right to an
office that confers the right to receive and appropriate the
salary, fees and emoluments incident to such office, and if an
officer *de facto* has obtained such salary, fees or emoluments,
he is liable to the officer *de jure* in an action for money had
and received. (*Mayfield* v. *Moore,* 53 Ill. 428.) And if suit
be brought by a person claiming to be an officer, for the salary
or compensation belonging to such office, his title to the office
is in issue, and if that be defective and another has the real
right, although not in possession, the plaintiff can not recover.

*Dolan* v. *Mayor*, 68 N. Y. 274; *Matthews* v. *Supervisors*, 53 Miss. 715; *Dorsey* v. *Smith*, 28 Cal. 21; *Andrews* v. *Portland*, 79 Me. 484; *McCue* v. *County of Wapello*, 56 Iowa, 698; *Comstock* v. *Grand Rapids*, 40 Mich. 397, and numerous other authorities. Whatever may be the rule in certain *mandamus* proceedings, and in suits in chancery in regard to questioning therein, collaterally, the title of *de facto* officers, we think that when a person brings an action at law against a county, municipality or private corporation, for the recovery of a salary incident to a particular office, and which he has no legal right to receive unless he has a legal right to the possession of such office, he necessarily puts his title to the office in issue. However, a certificate of election, commission, or other evidence, may be, under some circumstances, *prima facie* or even conclusive evidence of a *de jure* right.

In our opinion there was no error in the holding of the court now under consideration. Even if there was, it worked no injury to plaintiff in error, for if the supposed board of directors which assumed to appoint him president was neither a *de jure* nor a *de facto* board of directors, then he was without even color of election, and was, at most, a mere intruder into the office of president.

We find no substantial error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*