(No. 26546.—

THE PEOPLE *ex rel.* George F. Barrett, Attorney General, Petitioner, *vs.* PHILIP J. FINNEGAN, Judge of the Circuit Court of Cook county, Respondent.

*Opinion filed December 19, 1941.*

FARTHING and WILSON, JJ., dissenting.
MURPHY, C. J., and SHAW, J., specially concurring.

GEORGE F. BARRETT, Attorney General, for petitioner.

MICHAEL F. RYAN, (CHARLES P. R. MACAULAY, of counsel,) for respondent.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an original petition for *mandamus* filed by leave of the court. The petition is presented on the relation of the Attorney General against Philip J. Finnegan as judge of the circuit court of Cook county. It asks that the writ of *mandamus* issue compelling respondent to expunge from the record certain orders entered by him in the case of *James Gordon, plaintiff,* v. *Warren Wright, Treasurer of the State of Illinois, et al. defendants,* being cause No. 41-C8711 on the docket of said court. Respondent appeared and filed a motion to dismiss the petition. Following the established rule of this court in suits of this character, the motion to dismiss was treated as a demurrer to the petition and the issues were ordered closed. The cause has been submitted on the petition, the motion of respondent to dismiss, and upon briefs filed by the respective parties.

The facts, in so far as they are material to the decision of the case, may be briefly stated as follows: On October 20, 1941, one James Gordon, appeared *ex parte* before a judge of the circuit court of Cook county, and presented

a petition under the statute (Ill. Rev. Stat. 1941, chap. 102, pars. 11-17) for leave, as a taxpayer, to file a suit in equity for an injunction against the State Treasurer, the Auditor of Public Accounts, and others. The purpose of the suit which the petitioner sought leave to file was to restrain the use of public funds for the payment of salaries, wages, or compensation to certain unnamed persons alleged to have been appointed or employed in violation of the State Civil Service act. Leave was granted and the complaint was thereupon filed.

The State Treasurer, Auditor of Public Accounts, the Director of Finance, and the members of the Civil Service Commission, were named therein as defendants.

After setting out certain rules adopted by the Civil Service Commission, the complaint alleged that certain unnamed civil service employees had been wrongfully discharged from their respective positions; that the vacancies thus created had been filled by the appointment of certain unnamed persons who had not qualified under the Civil Service law, and whose names were not on the eligible lists; that such removals and appointments were made in violation of law; that the names of the persons who it was alleged had been unlawfully appointed would be certified by the Civil Service Commission and the Director of Finance as persons to whom salaries, wages, or compensation was due, and that payments thereof would be unlawfully made to them by the Auditor of Public Accounts and State Treasurer unless restrained by injunction.

The prayer of the complaint was that the defendants who were members of the Civil Service Commission be enjoined from certifying to the Auditor of Public Accounts any pay-rolls or accounts containing or including the names of persons "illegally appointed or employed in violation of" the Civil Service act; from certifying and approving pay-rolls containing names of persons holding positions under temporary appointments under the classified service, which

can be filled by certification and appointment from existing eligible registers, created under the act; restraining and enjoining the Auditor of Public Accounts from drawing, signing, or issuing any warrants or vouchers, for the purpose of paying, or causing to be paid, salaries or compensation to any person or persons illegally holding positions in the classified service, to which certification and appointments can be made from eligible lists; from signing, authorizing, or drawing any warrants for the payment of salaries or wages to persons illegally appointed or employed in violation of the act; from drawing, signing, issuing, or causing to be drawn, signed or issued, any warrants to be paid from the appropriation of $8550 appropriated for the biennium, for the office of Attorney General, for the salary, or wages, of a court reporter. Also restraining the State Treasurer from counter-signing or honoring any warrants or vouchers drawn by the Auditor in payment of the salaries of any such employes and "particularly for those illegally holding positions for which there are existing eligible registers from which certifications and appointments can be made," in accordance with the Civil Service act; also restraining and enjoining the Director of Finance from approving vouchers, bills and claims of the several departments of State for the payment of salaries to any persons, illegally appointed or employed in the classified service, to positions for which certifications can be made from existing eligible registers, and from issuing his certificate for the issuance of any such warrants. Also restraining all the defendants from illegally paying or causing to be paid, approving, certifying, or causing to be approved, or certified for payment, the salaries, wages, or compensation of persons "holding temporary appointments in violation of" the Civil Service law, "where certifications and appointments can and should be made from existing eligible registers;" and from illegally disbursing funds from the treasury of the State of Illinois for the illegal payment of salaries

and wages for persons "illegally appointed or employed in violation of" the Civil Service act.

The defendants appeared by the Attorney General and filed their motion to strike the complaint and dismiss the suit. By this motion they challenged the sufficiency of the complaint, in several particulars. It was alleged in the motion to strike that plaintiff was not, on the facts alleged in the complaint, entitled to equitable relief; that he could not maintain the suit; that he sought to question the right of certain persons to hold the offices to which they had been appointed, and that a court of equity had no jurisdiction of the subject matter. It asked that the complaint be stricken and the suit be dismissed on these and other grounds.

The motion to strike the complaint was overruled. The Attorney General elected to stand and abide by his motion and refused to plead further. Thereupon respondent, as judge of the circuit court, entered a final decree, by which it was ordered that a permanent writ of injunction issue as prayed for in the complaint.

The order granting the injunction was so general in its terms by simply referring to the prayer of the complaint as to its scope and extent, without naming anyone alleged to have been illegally removed from or appointed to an office or position, that it could only result in great confusion and injustice.

A further analysis, in detail, of the charges found in that complaint, is wholly unnecessary to a decision of this case. The gravamen of the charges is that certain civil service employees had been improperly dismissed from their positions and that others, not on eligible lists, had been unlawfully appointed to such positions. This is the sole basis on which the plaintiff in that case grounded his right, as a taxpayer, to enjoin the use of public funds for the payment of salaries or wages to those alleged to have been unlawfully appointed to positions under the classified service. No specific case is alleged or referred to in the com-

plaint, in which it is claimed or alleged that any employee was wrongfully appointed to a position in the classified service. The complaint abounds in meaningless generalities. The injunction amounts to nothing more than a general command to the State officials that no funds shall be, by them, disbursed unlawfully. Its postulates are no different from the general commands of the law itself.

By the petition for *mandamus* filed herein the Attorney General challenges the jurisdiction of the circuit court of Cook county and respondent, as judge of said court, to grant the injunction at the suit of a taxpayer or otherwise.

It is first contended by respondent that the Attorney General cannot maintain this suit for *mandamus*, as relator, against a judge of a court of record, as respondent, in order to have expunged a decree of the court, without making parties to the petition for *mandamus* either the plaintiff or the defendants to the injunction proceeding, and without showing in what respect the public interest is injured by the injunction. No authorities are cited by respondent in support of this proposition and we have found none.

The office of Attorney General, as it existed at the common law, is one of ancient origin. He was the only law officer of the Crown. (4 Reeves Hist. Eng. Law, chap. 25, p. 122.) The prerogatives which pertained to the Crown of England under the common law, in this country are vested in the people and the necessity for the existence of a public officer charged with the protection of public rights and the enforcement of public duties, by proper proceedings in the courts of justice, is just as imperative here as there.

In this State the constitution, by creating the office of Attorney General under its well-known common law designation and providing that he shall perform such duties as may be prescribed by law, ingrafted upon the office all the powers and duties of an Attorney General as known at the common law, and gave the General Assembly power to

confer additional powers and impose additional duties upon him. The legislature cannot, however, strip him of any of his common law powers and duties as the legal representative of the State. (*Fergus* v. *Russel, 270* Ill. 304.) The statute creating the office of Attorney General of this State prescribes his duties, which, under the above construction of the constitution, are imposed upon him in addition to the powers exercised by him at the common law. The statute, in prescribing the duties of the Attorney General, among other things provides: "Second—To institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer." (Ill. Rev. Stat. 1941, chap. 14, par. 4.) As chief law officer of the State he may exercise all such power and authority as public interest may from time to time require. He may institute, conduct and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order and the protection of public rights. (*Ex parte Young*, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. ed. 714.) He may maintain an action in any case which affects the public generally. He has all the powers belonging to that office at common law, in addition to those conferred by statute. (*Hunt* v. *Chicago Horse Railway Co.* 121 Ill. 638; *Saxby* v. *Sonnemann,* 318 id. 600.) He has arbitrary discretion to institute proceedings in any case of purely public interest. (*People* v. *Fullenweider,* 329 Ill. 65.) His right to institute proceedings on his own motion for the purpose of having void orders expunged from the records of courts of inferior jurisdiction, has always been recognized in this State. Many cases instituted by the Attorney General for that purpose against the presiding judge of the court alone, without making any other parties in interest, parties to the proceeding, have been sustained by this court. (*People* v. *Shurtleff,* 355 Ill. 210; *People* v. *Eller,* 323 id. 28; *People* v. *Fisher,* 303 id. 430; *People*

v. *Windes,* 283 id. 251; *People* v. *Turney,* 273 id. 546.) Many other like cases might be cited.

This court of its own motion has directed the Attorney General to appear on behalf of the people in a suit between other parties where the public interest was involved. (*Booth* v. *Opel,* 244 Ill. 317.) Moreover the injunction granted by respondent enjoined the payment of salary or wages to a court reporter employed in the office of the Attorney General. It directly affected an employee of his office and interfered with the discharge of the duties thereof.

We do not think it can be seriously contended that the case in which the order was entered, which the Attorney General here asked to have expunged from the record, did not involve important public questions and affect the public interests. The injunction, as ordered, if literally effective, was broad enough to include every employee in the classified service of the State whose appointment might be questioned, whether the challenge might be sustained or be determined to be wholly frivolous and unfounded. The contention of respondent that the Attorney General cannot maintain this suit in any event, or because of a lack of proper parties, cannot be sustained.

The only other question necessary to be considered in the case is the jurisdiction of respondent, as judge of the circuit court of Cook county, to enter the order in question.

We are met at the threshhold of the inquiry with the question of the jurisdiction of that court, and of respondent, to enter the injunctional order upon the facts alleged in that complaint. Obviously mere errors of law in the proceedings referred to cannot be reviewed by this court in this proceeding. The only question with which we are concerned is the question of jurisdiction. If the circuit court of Cook county and respondent as a judge of that court, had no jurisdiction to enter the order complained of, then it is the plain duty of this court to order it expunged from the records of said court. This makes it

unnecessary to consider any other question raised by the motion to dismiss filed in that case.

The issues presented by the complaint in that case involved the question of the alleged wrongful removal of certain employees of the State in the classified service, and the legality of the appointments of those designated to succeed them. The real issue which the court was compelled to decide was, in each instance, which of two employees was lawfully holding the office and entitled to the salary or wages incidental thereto. The court could not determine that issue without deciding the conflicting claims to the office. The case definitely required the court to try and decide the right or title to a public office or position. That a court of equity has no jurisdiction in such cases has been settled by the decisions of this court extending over a period of more than fifty years.

That question was considered by this court in *Burgess* v. *Davis,* 138 Ill. 578. That was a suit in equity brought by a taxpayer on his own behalf and on behalf of all other taxpayers in the county to enjoin the county clerk and county treasurer from paying the salary of the county judge. It was alleged that the county judge, after his election and qualification to that office, was elected or appointed to the office of trustee of a sanitary district and thereupon qualified and took the oath as such trustee. That he thereby vacated the office of county judge. This court, after pointing out that *quo warranto* was the proper remedy to question the title of the county judge to that office, said: " 'Courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature and cognizable only by courts of law.' (2 High on Inj. 3d ed. sec. 1312.) Where a specific remedy by *quo warranto* exists at law for the unlawful holding of an office, a court of equity will not entertain jurisdiction of the offense and will not grant an

injunction against the incumbent of the office. (*Idem.*)
The bill admits that the defendant Prendergast was county
judge *de facto* by setting up that he was 'claiming to act
and acting as judge of said county court since said accept-
ance of said office of trustee.' A court of equity will not
entertain jurisdiction for the purpose of enjoining a *de facto*
incumbent of an office from performing its duties. Such
result must be effected by judgment of ouster in a *quo
warranto* proceeding. It follows, that equity will not inter-
fere to enjoin the payment of fees, salaries or emoluments
to a *de facto* incumbent of an office. (2 High on Inj. 3d ed.
sec. 1314.) Public policy will prevent the courts from
interfering to disturb a *de facto* officer in the receipt of
the fees. (*Stone* v. *Wetmore*, 24 Ga. 601.) The enjoy-
ment of the fees, profits and advantages of the office are
so connected with the proper discharge of the duties of
the office itself that they cannot be separated. (*Tappan* v.
*Gray*, 9 Paige, 507; *Colton* v. *Price*, 50 Ala. 424; *People*
v. *Albany & Susq. R. R. Co.* 57 N. Y. 161; *McAllen* v.
*Rhodes*, 65 Texas, 348.) In *Tappan* v. *Gray, supra,* it was
held that the defendant was an officer *de facto,* and had
intruded himself into an office to which he was not entitled,
and that the complainant was entitled to the fees and emolu-
ments of the office, and yet it was at the same time held,
that a court of chancery had no jurisdiction to enjoin the
defendant from performing the duties or receiving the
fees of the office."

The question again arose in *Marshall* v. *Illinois State
Reformatory,* 201 Ill. 9. In that case the employee in-
volved was a physician appointed to a position in the State
Reformatory. He filed a suit in equity to enjoin the
board of managers from removing him from that office.
It was alleged, as in the case here involved, that the board
of managers had entered into a conspiracy to wrongfully
remove him from his office, in violation of the statute;
that the charges against him, upon which he was removed,

were not made in good faith, but only as a pretext and subterfuge to fraudulently, wrongfully and illegally depose him from his office and appoint some one else in his place and stead. The trial court dismissed the bill for want of equity. This court, in affirming that decree, used the following language: "We think it clear that the trial court did not err in dissolving the temporary injunction and dismissing the bill for want of equity, as it is well settled that the title to a public office and the right to exercise its functions cannot be determined by a court of chancery unless express authority so to do is conferred upon the court by statute, the remedy being in a court of law. (*Delahanty* v. *Warner*, 75 Ill. 185; *Sheridan* v. *Colvin*, 78 id. 237; *Fletcher* v. *Tuttle*, 151 id. 41; *Heffran* v. *Hutchins*, 160 id. 550; *Ex parte Sawyer*, 124 U. S. 200; *White* v. *Berry*, 171 id. 366.) In *Delahanty* v. *Warner*, *supra*, the appellant alleged in his bill that he had been unlawfully removed from his office as street commissioner by the aldermen and mayor of the city of Peoria, and sought to enjoin the appointment of a successor and the municipal officers from interfering with him in the discharge of his duty as street commissioner. The chancellor dismissed the bill. This court, in affirming the decree, said (p. 186): 'If he was not properly removed, and a successor cannot therefore be lawfully appointed, the question can be settled by *quo warranto* against the person claiming to be his successor in office.' In *Sheridan* v. *Colvin*, *supra*, the language of Mr. High in his work on Injunctions is quoted with approval, where it is said: 'A court of equity is not a proper tribunal for determining disputed questions concerning the appointment of public officers or their right to hold office, such questions being purely of a legal nature, and cognizable only by courts of law.' In *Ex Parte Sawyer*, *supra*, it is said: 'A court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in execu-

tive or administrative boards or officers or is entrusted to a judicial tribunal. The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by *certiorari*, error or appeal, or by *mandamus*, prohibition, *quo warranto*, or information in the nature of a writ of *quo warranto*, according to the circumstances of the case and the mode of procedure established by the common law or by statute.' And in *White* v. *Berry, supra*, it was held the removal of a United States gauger by an internal revenue collector for political and partisan purposes, in violation of the Civil Service act, could not be restrained by a court of the United States sitting in equity, the remedy being at law. It is elementary that the subject matter of all chancery jurisdiction is property and the maintenance of civil rights, and that matters of a political character do not come within its jurisdiction."

The case of *Lavin* v. *Commissioners of Cook County*, 245 Ill. 496, was a bill in equity by a taxpayer to enjoin the county commissioners and other county officials from the payment of fees, or salaries, to a special State's attorney and his assistants. The circuit court denied the relief as to the payment of the assistants but granted the prayer of the bill and enjoined the payment of any fees or salary to the special State's attorney. The Appellate Court for the First District reversed the circuit court in so far as it enjoined the payment of compensation to the special State's attorney. In reviewing the case this court said: "The doctrine is well settled that a court of equity is not the proper forum to determine a contest between conflicting claims of title to an office. (High on Injunctions, sec. 1312, and cases there cited.) In section 1314 of High on Injunctions it is said: 'It may be affirmed as a general and well-established rule that equity will not lend its interference in a contest between conflicting claimants to an office to enjoin the incumbent *de facto* from receiving the salary, fees or emoluments pertaining to such office, since such interference would, in effect, practically decide the dis-

puted question of title involved, and would thus usurp to a court of equity, through its preventive remedy by injunction, a jurisdiction which can only be exercised in a legal forum.' The rule laid down by High, above quoted, has often been approved by this and other courts." Later in the opinion the court quoted the language of the case of *Burgess* v. *Davis, supra,* with approval.

The same conclusion was reached in *Kucharski* v. *Harrison,* 264 Ill. 563. That also was a suit in equity brought by a taxpayer to enjoin the city of Chicago from paying salaries to certain officials or appointees. The court concluded, "The offices having been legally created, the right of *de facto* incumbents to hold them, discharge their duties and receive the salaries provided by law could not be inquired into in this form of action." Citing, *Lavin* v. *Commissioners of Cook County, supra, Marshall* v. *Illinois State Reformatory, supra,* and *Burgess* v. *Davis, supra.* Counsel have cited no case and our own independent investigation discloses no case in this State holding otherwise.

Respondent, however, argues that the motion to strike the complaint in the case pending in the circuit court admitted the facts pleaded in the complaint, and that upon the facts pleaded and admitted by the motion the court had jurisdiction of the subject matter of the suit. In order to avoid the effect of the rule announced in the above cases, it is argued that the employees referred to in the complaint as having been appointed to fill vacancies created by the alleged illegal discharge of others who were under the classified service, were not *de facto* officers or appointees.

It has been most difficult to determine what facts are alleged in the complaint. The facts pleaded are almost entirely obscured by repetitious generalities and redundant conclusions. A searching examination of the record discloses that in so far as the facts pleaded are concerned the allegations relate to three distinct charges. First: The alleged wrongful discharge of employees who were in the classified service, for political activities, under rule 14

adopted by the Civil Service Commission and set out in the complaint. Second: The alleged unlawful reinstatement of employees formerly employed in the classified service and who had, at some prior time, been discharged from such service. Third: The alleged unlawful appointment of others whose names were not on eligible lists to fill the vacancies created by the alleged wrongful removal of civil service employees.

As to those included in the first of the above classification, if any one of such employees has been wrongfully discharged upon the grounds alleged in the complaint, he has a specific remedy under section 12 of the Civil Service act. (Ill. Rev. Stat. 1941, chap. 24½, par. 14.) In all proper cases resort may also be had to the courts. These remedies must be enforced by the employee himself. They cannot be invoked by a taxpayer in his behalf. As to those included in the second of the above classes, if any employee has been wrongfully reinstated his right or title to the office or position may be questioned in an appropriate proceeding by *quo warranto*. This is also true as to those in class three. The oft-repeated averments in the complaint that certain persons, none of whom are identified in the complaint, have been unlawfully discharged and others unlawfully appointed, is a pure conclusion of law and not the averment of facts. *People* v. *Palmer,* 356 Ill. 563.

The other averments in the complaint are devoted to an expression of the plaintiff's disapproval of the manner in which the members of the Civil Service Commission, and other public officials of the State, are conducting the business and affairs of their respective offices. Such averments are wholly impotent and must be disregarded.

On this question of jurisdiction respondent cites and relies on two decisions of this court. The first of the cases cited is *People* v. *Schmidt,* 281 Ill. 211. That was an action at law—a petition for writ of *mandamus*. The relator had been employed in the classified service as a grain inspector.

He alleged that he had been wrongfully discharged from this position. By his petition he alleged that he was discharged on October 23, 1915, and was reinstated on January 28, 1916. He asked for a writ of *mandamus* to compel the payment of his salary during the period of time that he was illegally laid off or severed from his position. He sought to sustain his right to the salary during his period of unemployment upon the averment that his successor was illegally appointed. The opinion states that the only question involved was whether the payment of a salary provided for an office or position to a *de facto* employee or officer in such position, was a good defense to a claim against the public corporation making such payment in an action by a *de jure* officer or employee, to recover such salary. The court, in passing on that question, in determining what was necessary to constitute a *de facto* officer, said: "The true doctrine seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint, and that a statute, though it should be found repugnant to the constitution, will give color." As already observed that case was an action at law in which the question of the jurisdiction of a court of equity to determine the right or title of one of two parties to an office, was not involved. The question arising in that case was whether, after the salary had been paid to a *de facto* officer, the officer *de jure* could compel the Civil Service Commission to certify his name on the pay-roll, as entitled to receive the salary for the same period. It is not authority for the contention of respondent in this case that the unidentified employees, referred to in general language in the complaint, were not officers *de facto,* and that their title to the offices can be litigated in a court of equity. *Hittell* v. *City of Chicago,* 327 Ill. 443.

The only other case relied on by respondent is *Saxby* v. *Sonnemann,* 318 Ill. 600. That was a suit in equity for an accounting and to recover compensation already paid,

some years before, to an employee in the office of the Attorney General. There, the employee had been elected a member of the House of Representatives in the General Assembly, for a term of two years. During the term of office for which he was elected, and while he continued to hold such office, it was alleged that he was employed by the Attorney General as a deputy or investigator to assist in the enforcement of the Search and Seizure act, (Laws of 1919, p. 930,) and that he had been unlawfully paid compensation therefor, out of appropriations made for the office of the Attorney General. It was held that because of the fact that the employee was an elected member of the legislative branch of the government his appointment to a position in the office of the Attorney General—an office in the executive department—was in direct violation of article 3 and section 15 of article 4, of the constitution. The employee was required to account for and repay the money, so unlawfully paid to him. No question was involved in that case as to the right of a court of equity to determine the right or title to an office. That question was not involved. No question as to the jurisdiction of a court of equity was raised or passed upon. The purpose of the suit was solely the recovery of money. The employee did not hold or claim the office at the time the suit was brought. His right or title to the office was in no way involved. Neither was the right of any other person to the office a question in the case. Any issue as to which of two persons was entitled to hold the office was wholly moot.

The observation of the court in the course of the opinion that the employee there involved could not be a *de facto* officer because of his disqualification to hold the office in which he had served, while he was an elected member of another branch of the government, was made with reference to his claim that even though he could not legally hold the position or appointment in the executive branch of

the government, still he was a *de facto* officer and entitled to retain the salary which he had unlawfully received. That case is not authority for the contention here made. The court there was not required to pass upon the right or title to an office or position. The only question decided by the court was that the employee involved, being a member of the legislative branch of the government, was prohibited by the constitution from exercising any of the powers of any other department, and that by reason of this constitutional prohibition he could not exercise the power or discharge the duties for which he claimed compensation as a *de facto* officer. Necessarily he could not be a *de facto* officer in the executive department while holding an elective office in the legislative department of the State government. It appears that the employee in that case had served in the position from August 1, 1919, until December 31, 1920. The suit was not brought until after the employment terminated. It is clear, therefore, that the case did not in any way involve the right or title of the employee, or anyone else, to the position, or appointment. The employment had already been terminated. The only question involved was whether he had, during a period of time, some years prior to the time the suit was brought, unlawfully received money from the State treasury in violation of the constitution.

Here there is no charge that the appointees whose right to the positions to which the complaint alleges they were unlawfully appointed, were legally disqualified to hold such offices or positions, by the constitution or otherwise, nor is there any charge that they were *de jure* officers in any other branch of the government. It is only the manner in which the vacancies are alleged to have been created and the methods pursued in filling such vacancies, that are challenged. Under the allegations of the complaint, if there were, in fact, vacancies in these positions, then the right of those appointed to such vacancies could not be questioned

in a suit in equity. If the vacancies were found to exist, such finding would necessarily dispose of the legality of the appointment of the successors, except for some legal disqualification which they possessed. No disqualifications to hold the offices were alleged, if these vacancies did exist. The charges go only to the manner of the creation of the vacancies and the right to make the appointments because it is alleged that no such vacancies did, in fact, exist. The charge that the successor appointees were not appointed from eligible lists would only amount to an irregularity in making the appointments and not to the disqualification of the appointees.

In determining whether a vacancy existed in any office or position the court would be compelled to determine the title to the office or the person who it was claimed had been unlawfully removed therefrom. In order to determine whether any person appointed to fill any such vacancy had been lawfully appointed the court would also be compelled to determine the right of such appointee to the office. There is no claim that any appointee was not appointed by the officer or authority authorized by law to make such appointment. The charges relate only to alleged irregularities in making the appointments. Such appointments, however irregular or invalid, constituted color of title to the offices and the appointees were officers *de facto* whose right or title thereto cannot be litigated in a court of equity.

A clear definition of what is necessary to constitute one a *de facto* officer is found in many authorities. In *Waterman* v. *Chicago and Iowa Railroad Co.* 139 Ill. 658, it was said: "In Angell & Ames on Corporations (sec. 287) it is said: 'The best definition we have seen of an officer *de facto* is that given by Lord Ellenborough in *The King* v. *The Corporation of Bedford Level,* 6 East, 368.' That definition is this: 'An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.' In *Vaccari* v. *Maxwell,*

3 Blatchf. 368, the court says: 'We think, however, that the decisions in relation to the act of officers *de facto* are reasonably to be restricted to those who hold office under some degree of notoriety, or are in the exercise of continuous official acts, or are in the possession of a place which has the character of a public office.' In *State ex rel. Corey* v. *Curtis,* 9 Nev. 325, it is said: 'In order to make a person an officer *de facto,* the law requires that he should in some way be put into the office, and that he should also have secured such a holding thereof as to be considered really in peaceable possession and actually exercising the functions of an officer.' "

In *Howard* v. *Burke,* 248 Ill. 224, this court said: "A mere claim to be a public officer and exercising the office will not constitute one an officer *de facto.* There must be at least a fair color of right or an acquiescence by the public in his official acts so long that he will be presumed to act as an officer either by right of appointment or election. (*Brown* v. *Lunt,* 37 Me. 423.) A *de facto* officer was defined by Lord Ellenborough as 'one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law.' (*Rex* v. *Bedford Level,* 6 East, 356; *Barlow* v. *Stanford,* 82 Ill. 298; *State* v. *Carroll,* 38 Conn. 449; 8 Am. & Eng. Ency. of Law—2d ed.— p. 781, and cases cited.) Color of title to an office has been defined to be 'that which in appearance is title but which in reality is no title.' (*Wright* v. *Mattison,* 18 How. 50; 8 Am. & Eng. Ency. of Law,—2d ed.—794.) Color of authority (which is usually considered synonymous with color of title) to an office is held to be authority derived by an election or an appointment, however irregular or informal, so that the incumbent be not a mere volunteer.— McCrary on Elections,—4th ed.—sec. 253; *State* v. *Oates,* 86 Wis. 634; *People* v. *Lieb,* 85 Ill. 484."

It follows that the court was without power or jurisdiction to determine the title or right to the offices of those

who, it was alleged, had been unlawfully removed. The court was equally without jurisdiction or authority to determine the right or title of those alleged to have been irregularly or unlawfully appointed to the offices involved. Such appointees were officers *de facto*. Their right or title thereto can only be questioned in an appropriate action at law. Such questions are beyond the jurisdiction of a court of equity.

A careful consideration of the complaint, and the rules of law applicable to the case made by the complaint, demonstrates that the case presented was beyond the jurisdiction of the court.

The order entered by respondent in said cause, on November 10, 1941, granting the injunction as prayed, was void.

The writ of *mandamus* is awarded directing respondent to expunge this void order from the records of that court.

*Writ awarded.*

FARTHING and WILSON, JJ., dissenting.

Mr. CHIEF JUSTICE MURPHY, specially concurring:

I agree with the conclusion that the writ of *mandamus* should be issued, but I do not agree with the reasoning set forth in the majority opinion.

This case might well be disposed of on the basis that the circuit court of Cook county did not have jurisdiction of the parties. The 7th section of the Civil Practice act (Ill. Rev. Stat. 1941, chap. 110, p. 2416) provides: "Except as otherwise provided in this act, every civil action shall be commenced in the county where one or more defendants reside or in which the transaction or some part thereof occurred out of which the cause of action arose." The complaint contains no allegation in reference to the residence of any of the defendants, nor is there any allegation that any part of the transaction or some part

thereof out of which the cause of action arose occurred in Cook county.

The constitution requires that persons holding the offices of State Auditor and State Treasurer shall during their term of office reside at the seat of government, that is, in Springfield, Sangamon county. It is my view that the motion of the defendants to strike filed in the circuit court of Cook county raised this question and is preserved in the record here.

The complaint filed in the circuit court of Cook county should in my opinion be construed as a proceeding having for its ultimate aim the enforcement of the provisions of the Civil Service act. The statute and equitable rule which permits a taxpayer to enjoin the payment of public funds on the grounds there is to be an illegal disbursement does not extend to him the right to proceed in equity to enjoin the payment of public funds when the gist of the action is to enforce a provision of the Civil Service act and the payment of money a mere incident. The gist of the cause of action as stated in the complaint is that payment of salaries and compensation be enjoined so that they would be paid to other employees. The court was without jurisdiction of such subject matter and the *mandamus* was properly awarded.

Furthermore, the majority opinion does not distinguish between the remedy of *quo warranto* to try the title to an office and the remedy pertaining to a position which is a mere matter of employment.

Mr. JUSTICE SHAW, specially concurring: I concur in the conclusion reached in the majority opinion but not in all that is said therein.